## George Ligare v. James Semple and others.

*Promissory notes: Purchase price of lands: Stipulation as to dower: Construction.* A stipulation annexed to a note given for part of the purchase price of lands, that the same was not to be paid until the payee at his own expense should obtain a release of an apparent right of dower to the lands in the wife of his grantor, or until said apparent right of dower should otherwise cease to exist, is construed to mean that the makers were to be made satisfied that no such right of dower existed in favor of the person named, and that the state of the record did not imply that it did; but it is held that they were bound to be satisfied on reasonable evidence, and were not at liberty to close their eyes against law and fact and arbitrarily insist that they are not satisfied.

*Dower: Non-resident wife: Lands conveyed by husband.* A wife who is a non-resident of the state at the time the husband makes an absolute conveyance of lands, divesting himself entirely of his seizin and estate, has no right of dower under the statutes of this state in the lands so conveyed.

*Equity jurisprudence: Dower right: Parties.* It is competent, in a suit to foreclose a mortgage given to secure the payment of a note containing a stipulation like the above, where the dower right therein referred to is made a ground of defense, to pass upon the question of such right, although the person in whom the right is claimed to exist is not made a party, and could not regularly be joined as a party.

*Promissory notes: Purchase price of lands: Stipulation as to taxes: Construction.* A stipulation annexed to a note given for part of the purchase price of lands, that it should not be payable until the payee, at his own expense, should clear up the taxes and tax-titles standing against the lands, is to be construed and applied, in a suit to foreclose a mortgage given to secure such note, in an equitable spirit and not in an extreme sense.

*Construction of stipulation as to tax-titles.* Such a stipulation is construed in this case as applying only to taxes and tax-titles still actually standing against the lands, and not to any indicated tax interests that have since by any means been extinguished; and its requirements are held to be satisfied, under the circumstances of this case, by the tender of a good, marketable title, not liable to be defeated on account of prior taxes.

*Tax interests: Mortgages: Standing tax titles: Stipulation construed.* And tax purchases made by persons acting on behalf of the owner at the time, or of one of two or more tenants in common, those made by third persons who have since conveyed to the complainant or his counsel, and those made by complainant and his counsel, and those which have been presumptively cut off by subsequent purchases by complainant, or by others for him, are held not to be such standing tax interests not cleared up as by force of the stipulation in question will preclude the enforcement in equity of the mortgage lien for the payment of such note.

*Equity jurisprudence: Mortgage foreclosure: Clearing up tax interests: Final decree.* The complainant, being now at the final hearing in a condition to meet the requirements of said stipulation as to clearing up tax interests standing against the lands, though he was not when he filed his bill, is permitted, by analogy to the rule in cases of specific performance

allowing relief to be granted where the party is able to make a good title before final decree, upon his procuring to be transferred to defendants, subject to the mortgage, such tax interests as are shown by the proofs to be held by him and by others for him, to take a decree of foreclosure and sale.

*Heard June 18.    Decided October 19.*

Appeal in Chancery from Delta Circuit.

*Maynard & Ball* and *C. C. Bonney*, for complainant.

*Hughes, O'Brien & Smiley*, for defendants.

GRAVES, CH. J:

On the 22d of March, 1867, the complainant deeded to defendants Semple, Lynch and McDonald the undivided one-half of certain described parcels of land situated in the counties of Delta, Menominee and Marquette, the area of the whole parcels being more than seventeen hundred acres. At the same time complainant and his wife, being separate and respective owners of other tracts in the same counties amounting to more than three thousand three hundred acres, joined in deeding them also to the same parties. The agreed purchase price for the transfers was forty-two thousand dollars, and of this sum thirty-two thousand was to be secured by the personal obligations of the grantees and their mortgage on the premises. Of the undivided half-interest mentioned, the most of it had been deeded to complainant May 28, 1864, by Elijah Peacock and wife and one Joseph Peacock, the latter being married but his wife not having joined. The fact that Mrs. Peacock was not a party to the deed to complainant was known when the latter deeded to the three defendants, and at the same time it was also understood that there were outstanding tax-titles against some portions of the land.

In this state of things, and after some parley respecting Mrs. Peacock's real and seeming rights, and concerning the tax-titles, the particulars of which may be waived for the present, the securities for the thirty-two thousand dollars

purchase money were drawn, executed and delivered, and two of the personal obligations were framed as follows:

"$8,000.                              ESCANABA, Delta Co., Mich., }
                                          "March 22, 1867.        }

"On or before the first day of August, in the year 1869, for value received, we jointly and severally promise to pay to the order of George Ligare, the sum of eight thousand dollars, with interest at seven per cent. per annum from date. *It being understood by the payers and payee of this note, that the sum of money to be paid by this note, or any part thereof, shall not become due or payable until the payee hereof shall at his own expense obtain a release of an apparent right of dower that exists in the person of Margaret Peacock, on some of the lands for which this note is given as part-payment, or said apparent right of dower shall otherwise cease to exist.*

                                          "JAMES SEMPLE,
                                          "JOHN LYNCH,
                                          "JOHN S. McDONALD."

"$3,000.                              ESCANABA, Delta Co., Mich., }
                                          "March 22, 1867.        }

"On or before the first day of August, 1869, for value received, we jointly and severally promise to pay to the order of George Ligare, the sum of three thousand dollars, with interest at seven per cent. per annum from date. *The amount of money called for in this note shall not· be payable until the said Ligare shall at his own expense clear up the taxes and tax-titles standing against the lands for which this note is given in part-payment.*

                                          "JAMES SEMPLE,
                                          "JOHN LYNCH,
                                          "JOHN S. McDONALD."

Some time after these obligations were given, and prior to August, 1869, complainant claimed that in truth Mrs. Peacock had no right of dower when his deed was given to defendants, and that the payment of the eight thousand dollars was not rightly subject to be deferred on account of

any right in her. The defendants on the other hand insisted that payment could not be required of them until what they called her apparent right was in some way released or removed. And subsequently, the precise time not appearing, they offered thirteen thousand dollars on the obligations, but subject to the proviso that it should be made to appear by abstract or otherwise that the conditions appended to the obligations had been carried out.

· Finally, the two securities remaining unpaid, the complainant, on the 20th of June, 1872, filed this bill to enforce payment by foreclosure, and also to subject the lands for taxes alleged to have been paid by complainant to protect his mortgage security.

The three makers of the mortgage and of the foregoing instruments were made defendants, and with them were joined the other parties, in character of subsequent purchasers, incumbrancers or otherwise.

All answered, and set forth as final ground of defense, that the conditions attached to the obligations had not been performed, and hence that no part of the money had yet fallen due.

Proofs were taken, and the cause coming on upon final hearing, the court below dismissed the bill, and complainant appealed.

On the hearing in this court the cause was elaborately argued on the part of complainant, but was submitted by defendants on a printed brief. The basis of the defense was combated on different grounds, but it is not deemed needful to examine all the propositions made.

The defense to the obligation for eight thousand dollars may be first considered, and it seems scarcely necessary to say that this court, called on to administer the doctrines of equity in a case of this nature, must look at the essence and substance of the transaction, and endeavor to guard against any construction likely to infringe any settled principle of the court.

It is well in approaching the question to notice somewhat

32 MICH.—56.

the positions occupied by the parties, and also some other facts. The complainant desired to sell the real property interest in question, and the three defendants were anxious to buy it. The purchase price was agreed upon, and this was considered fair if the defendants received what they bargained for. The money specified in this obligation is a portion of that price, and if withheld is so much taken therefrom. If it is withheld whilst the defendants hold a title free from legal objection, it is in effect so much forfeited to them out of the consideration. They are allowed to retain a large amount of complainant's property without compensation. What complexion does the transaction wear in regard to any right in defendants to withhold this eight thousand dollars? The restriction does not touch the existence or justness of the debt. It looks merely to the postponement of payment, and the impediment named is an outstanding apparent right of dower in Mrs. Peacock. When the three defendants made the obligation, they well knew that Mrs. Peacock was a resident of Illinois, and not of this state, at the time her husband deeded to complainant. This is shown by the answer and by the deposition of McDonald and Lynch, and the latter swears that the record of title showed it.

They further swear that their counsel informed them that in truth Mrs. Peacock had no right of dower, because she lived out of the state, but that she had an apparent right. And Lynch testified that the want of her signature to the deed was the circumstance which produced the apparent right.

McDonald further testifies that the condition was added because the question of dower was a subject of doubt among them all, and that the course adopted was taken to enable the matter to be then closed up, and to allow until the notes should be due to clear up the record. He says: "All we expected was for them to give us a perfect title, with a record that was clear. Didn't expect to quibble about little and unnatural things.. Wanted a title that was good to keep, or good to sell." Lynch says: "All parties agreed

there was an apparent right of dower which existed in Mrs. Peacock; all we wanted was to be satisfied that we had a good, fair title; we wanted the records to show this." Semple says: "The phrase *apparent right* of dower meant, as I understood, when Mr. Ligare made his title clear, the note was to be good. To make the title clear, Mr. Ligare was to get Mrs. Peacock to sign the deed, or to clear it up in some other way. The word *apparent* was put there to cover a supposed right which might exist."

The fair deduction from the defendants' explanations is, that they were to be made satisfied that Mrs. Peacock had no right of dower, and satisfied that the state of the record did not imply that she had. Accepting this view, they were bound to be satisfied on reasonable evidence, and are not at liberty to close their eyes against law and fact and arbitrarily insist that they are not satisfied.

It is noticeable that Ligare tried to get Mrs. Peacock to give a release, and that she refused. That she could not be compelled to make such a paper, is too plain for argument, and we are not aware of any legal proceedings open to Ligare to make it less apparent that she has any right. When defendants' counsel informed them she had no right at all, they were certainly correct. The facts were all understood. This is admitted. And it was just as certain, in view of those facts, that no contingent right remained outstanding on her account as it would have been if it had been known she had died in the lifetime of her husband.

The precise point was not directly in judgment in *Pratt v. Tefft, 14 Mich., 191,* but it was strongly intimated. It was there held that in case a woman should reside here with her husband at the time of his conveyance, and thereafter should remove away and reside abroad at the time of his death, she would lose all right of dower in land so conveyed; and this was put upon the ground that the statute contained a negative implication against any right in her in case of her non-residence at her husband's death. Admitting this construction to be correct, the legislative

purpose is much plainer to withhold the right in case she
resides abroad when her husband conveys.   The estate he has
once absolutely conveyed he cannot be seized of at his death,
and the woman, if a non-resident, is only allowed a right
of dower in lands of which her husband dies seized.   It is
true he may become seized anew, or rather of a new estate
in the same lands, and may die so seized, but in such
case the second seizin and estate would not be identical with
the first, but separate and distinct, and any right of dower
as regards the last would have no legal connection whatever
with the first.   If the woman is a non-resident at the time
her husband conveys absolutely, and divests himself entirely
of his seizin and estate, there can be nothing for the right
of dower to attach to.   She is a non-resident and the estate
and seizin are gone, and the same estate and seizin can
never return.

Mrs. Peacock then in fact had no right of dower.   The
circumstance showing she had none was known.   One of
the defendants swears that the record disclosed it.   She had
no apparent right in any proper sense, and of course no
right subject to be released.   There was as absolutely no
more appearance of a right on her account than there
would have been if she had died the day after her husband's
deed to complainant.   Such being the case, the substance
and essence of the transaction require nothing more.   In
no just sense is there any apparent right on account of Mrs.
Peacock, and it would be very absurd for a court to say
that complainant ought not to have his money until some-
thing which does not exist is made to cease to exist.   The
equity depends upon the existence or non-existence of the
thing, and not upon fruitless subtleties.

There are other considerations springing from equitable
analogies which lead to the same final conclusion, but the
case does not require their presentation.

We cannot assent to the notion advanced by the learned
counsel for defendants, that it is incompetent to find in this
suit that Mrs. Peacock has no shadow of right, inasmuch as

she is not a party. It would have been irregular to have joined her as a party in this case in order to raise a litigation with her on this matter.—*Chamberlain v. Lyell, 3 Mich., 448; Merchant's Bank v. Thompson, 55 N. Y., 7 ; Lewis v. Smith, 9 N. Y., 502.* And yet we have a complete case between complainant and defendants, and the point concerning Mrs. Peacock's right is, as between such parties, directly raised, and if as between them the court is powerless to decide, the consequence must be that no judicial settlement as regards the rights of the actual litigants can ever be had.

The difficulty suggested would be the same in principle if in a separate proceeding against Mrs. Peacock she had been finally adjudged to be without right, because in such a state of things the adjudication would have to be introduced here where she is not a party. As the case is constituted, with all the governing facts admitted, the statute decides, and there is no room for argument,—no room for question as between these parties. A contrary opinion would require the court to insist upon the bringing in of the assignor of a mortgage in a foreclosure by the assignee, where the admitted facts conclusively demonstrate that in point of law the assignment is absolute and complete.

Upon the whole, we think no defense is made out on this record against the claim based on the obligation given for eight thousand dollars.

We next come to the resistance made to the foreclosure in respect to the obligation entered into for the payment of the three thousand dollars of purchase money. The restrictive clause of that obligation declared that the money should not be payable until the payee should, at his own expense, clear up the taxes and tax-titles standing against the lands for which the instrument was given in part-payment.

This is not very plain or definite. The end to be accomplished was the clearing up, and in what that was to consist the parties did not explain, if there was any distinct notion on the subject in their minds. No mode of action was

suggested, and we can only suppose that the course was meant to be left to Ligare's discretion.

The parties were mutually eager to trade, and the oral testimony given by the defendants who made the bargain with complainant tends to show, what we should infer without it, that nothing unfair or technical or unreasonable was intended or expected.    All were business men and disposed to act upon practical business principles.    No sharp advantage was thought of, nor any overreaching contemplated.

The three defendants were seeking to secure the fair marketable title in the undivided half of numerous tracts, and against this interest there were many traces, more or less distinct, of tax interests.    They well understood that this was not an unusual thing, but common experience in regard to lands throughout many parts of the state, and especially in lumber and mining districts, and in the region where the lands in question lie.    They also knew that quite commonly indications of standing tax interests are really fallacious, and liable to be dissipated by examinations and inquiry.    They were likewise aware that it sometimes happens that marks exist of an old tax-sale, and yet the holder cannot be found.    As it was, time was lacking for investigation.    Under these circumstances the arrangement in question was made, and it should be construed and applied in an equitable spirit.    To enforce it in any extreme sense would be harsh and unreasonable, and would disappoint what we must think to have been the true purpose.    If the judgment of the court comes short of what the defendants consider right, it must be remembered that the terms they dictated in the paper, on being applied to the subject matter, are greatly wanting in clearness and precision.

It can hardly be imagined that if successful in getting a good marketable title, one not liable to be defeated on account of prior taxes, the defendants were still to be excused from paying the purchase money.

The stipulation as to taxes and tax-titles was framed

expressly to apply to such as were then standing against the interest for which the note was given in part-payment, and whatever signs there were of taxes or tax-titles, if, in fact, the taxes or tax-titles so suggested were not then standing against the property, they were not made subject to be cleared up; and if, without the aid of defendants, any taxes or tax-titles, which were standing at the time complainant deeded, have been since extinguished or been made to be not standing against the interest deeded, they have been cleared up within the spirit of the transaction. If any remain still outstanding, though subject to complainant's control, they ought to be considered in shaping the disposition of the case.

All of these matters must be decided upon the evidence given. If upon the proof it turns out that any indicated taxes or tax-titles were not standing against the land, giving the proof on the subject its due bearing and operation, then for the purpose of this case such indicated taxes or tax-titles must be considered as out of the way. And if upon the proof thus construed and applied, it appears that any which were standing against the deeded property have since the deed been extinguished, or caused to be not standing through other means than the defendants', they must be considered for the purpose of this case as cleared up.

We cannot speculate upon possibilities. We can only deal with the issues in the case, upon the evidence given in the case. And we must look at this evidence according to its nature and aptness. There may be something beyond the record, but we cannot assume that there is. We may as well in any other case as in this step aside and conjecture a state of things not disclosed to us.

It seems best to enter into some details even at the risk of being tedious.

On the 28th of January, 1856, Joseph Peacock and wife deeded to complainant an undivided half of the northwest quarter of section fifteen, of the east half of southwest quarter of section seven, of lot two on section twelve, of

fractional section twenty-two, and of lot one of section twenty-one, all in township thirty-eight, range twenty-three.

On the 28th of October, 1862, Joseph Peacock deeded to Elijah Peacock the undivided one half of northwest quarter of section fifteen, of west half of southwest quarter of seven, of lot two of section one, of lot two of section twelve, of fractional section twenty-two, all in township thirty-eight, range twenty-three; also of northeast quarter of southwest quarter of section eleven, of east half of northwest quarter of section eleven, of southeast quarter of northeast quarter of section twenty-four, all in township forty-one, range twenty-five; also of south half of northwest quarter of section thirty-two, of west half of section thirty-two, of southwest quarter of southeast quarter of section thirty-four, all in township forty-two, range twenty-five; also of southwest quarter of southeast quarter of section twenty-five, of northwest quarter of northwest quarter of section fifteen, all in township forty-two, range twenty-six; also of northwest quarter of southeast quarter of section eight, of southeast quarter of southeast quarter of section eighteen, all in township forty-three, range twenty-nine; also of lot three on section twelve, of fractional section twenty-three, of lots four and five on section fifteen, of fractional section thirteen, of lot one on section fourteen, of lots two, three, four, on section fourteen, of lot four on section twelve, of lot three on section fifteen, of west half of southeast quarter of section ten, of southwest quarter of southwest quarter of section three, of southwest quarter of southwest quarter of section eighteen, of south half of northwest quarter of section ten, and of fractional north half of northeast quarter of section twenty-one, all in township thirty-eight of range twenty-three.

On the 28th of May, 1864, Elijah Peacock and wife and Joseph Peacock deeded to complainant the undivided half of southwest quarter of southwest quarter of section three, of northwest quarter of southwest quarter of section seven, of west half of southeast quarter of section nine, of west half of southeast quarter of section ten, of south half of

northwest quarter of section ten, of lot three on section twelve, of lot four on section twelve, of fractional section thirteen, of lots one, two, three, four, on section fourteen, of lot one on section fifteen, of lots two, three, four, five, on section fifteen, of southwest quarter of southwest quarter of section eighteen, of lot two on section twenty-one, all in township thirty-eight, range twenty-three; also of northwest quarter of southeast quarter of section eight, of northeast quarter of southwest quarter of section eleven, of east half of northwest quarter of section eleven, of southeast quarter of northeast quarter of section twenty-four, all in township forty-one, range twenty-five; also of southeast quarter of southeast quarter of section thirty-one, of southwest quarter of southwest quarter of section thirty-two, of west half of southeast quarter of section thirty-two, of southwest quarter of southeast quarter of section thirty-four, all in township forty-two, range twenty-five; also of northwest quarter of northwest quarter of section fifteen, of southwest quarter of southeast quarter of section twenty-five, all in township forty-two, range twenty-six; also of southeast quarter of southeast quarter of section eighteen, in township forty-three, range twenty-nine.

On the 14th of December, 1866, Joseph Peacock and wife and Elijah Peacock and wife deeded by deed of warranty to the defendants, John S. McDonald, John Lynch and James Semple, and to Alexander McDonald, the undivided half of northwest quarter of section fifteen, of east half of southwest quarter of section seven, of lot two on section one, of lot two on section twelve, of fractional section twenty-two, of lot one on section twenty-one, of lots two, three and four on section fourteen, of lot four on section twelve, of lot three on section twelve, of fractional section thirteen, of lot one on section fourteen, of lots one, two, three, four and five on section fifteen, of southwest quarter of southwest quarter of section three, of southwest quarter of southwest quarter of section eighteen, of northwest quarter of southwest quarter of section seven, of west half of southeast quarter of section

32 MICH.—57.

nine, of west half of southeast quarter of section ten, of south half of northwest quarter of section ten, of lot two on section twenty-one, all in township thirty-eight, range twenty-three; also of northeast quarter of southwest quarter of section eleven, of east half of northwest quarter of section eleven, of southeast quarter of northeast quarter of section twenty-four, all in township forty-one, range twenty-five; also of southwest quarter of southwest quarter of section thirty-two, of west half of southeast quarter of section thirty-two, of southeast quarter of southeast quarter of section thirty-two, of southeast quarter of southeast quarter of section thirty-one, of southwest quarter of southeast quarter of section thirty-four, all in township forty-two, range twenty-five; also of southwest quarter of southeast quarter of section twenty-five, of northwest quarter of northwest quarter of section fifteen, all in township forty-two, range twenty-six; also of northwest quarter of southeast quarter of section eight, and of southeast quarter of southeast quarter of section eighteen, all in township forty-three, range twenty-nine.

On the 22d of March, 1867, complainant and wife deeded by deed of warranty to defendants Semple, Lynch and McDonald the undivided one-half of the last mentioned lands, and the obligation for three thousand dollars was given for so much of the purchase price as before mentioned.

The lands to which the restriction in it relates comprise twenty-three parcels in Delta county, three in Menominee and eight in Marquette county.

In tracing them it will be most convenient to follow the plan of complainant's counsel and number them from one to thirty-one, giving to number sixteen four parcels. Following this arrangement, the parcels numbered from one to twenty, inclusive, lie in Delta; from twenty-one to twenty-three, inclusive, in Menominee, and the remainder in Marquette.

Before proceeding, however, with this list it is proper to premise that it appears from the evidence, and especially by the deposition of Joseph Peacock, who was called and sworn

for defendants, that S. Q. Perry and Elijah Peacock, who seem to have bid in several parcels for different years, acted in so doing for Joseph Peacock, and that in substance and effect their purchases were his purchases.

No. 1. Lot two on section one, township thirty-eight, range thirty-three. This was sold and deeded to C. W. Butler for taxes of 1857 and 1858, and complainant obtained a deed from Butler, May 24, 1872. It was also sold to Perry for the tax of 1859, but no deed has been given thereon. And it was again sold to complainant for the tax of 1865 and not deeded. If Butler retained any interest under his purchase after the later sales, it was acquired by complainant through the deed of 1872. And if Perry obtained any interest by his purchase, it was presumably cut off by complainant's purchase for the tax of 1865, unless complainant then owned in common with Elijah Peacock, to whom Joseph Peacock deeded an undivided half in October, 1862. If such was the case, then the record leads to the opinion that Joseph Peacock and complainant were tenants in common in 1859, and in that event Perry's purchase was the purchase of Joseph Peacock, one of the tenants in common. If this was the state of things, the purchase by Perry for Joseph Peacock was in effect a payment of the tax as against complainant, and not an acquisition of interest.—*Page v. Webster, 8 Mich., 263; Butler v. Porter, 13 Mich., 292.* Upon the facts shown by the record, then, Perry's purchase either gave no interest against complainant, or was presumptively cut off by complainant's purchase in 1865. We cannot, therefore, consider that any interest was standing on account of that purchase against the undivided half in question, either when complainant deeded to the three defendants, or when he filed his bill.

No. 2. The southwest quarter of southwest quarter of section three, township thirty-eight, range twenty-three. This was sold and deeded to C. W. Butler for the taxes of 1857 and 1859, and was deeded by Butler to complainant May 24, 1872. It was also sold to complainant for taxes of

1861 and 1862, but no deeds have been given on such sales. If Butler, after these later sales, possessed an interest on account of his purchase, complainant acquired it by the deed of 1872.

No. 3. The northwest quarter of southwest quarter of section seven, township thirty-eight, range twenty-three. This was sold to complainant for the taxes of 1862, but no deed has been given on the sale. There can be of course no question about this. Complainant's grants to the mortgagors carried all his right.

. No. 4. The east half of southwest quarter of section seven, township thirty-eight, range twenty-three. This was sold and deeded to C. W. Butler for taxes of 1857 and 1858, and he deeded to complainant May 24, 1872. It was also sold to Perry for tax of 1859, but no deed has been given on such sale. Afterwards it was sold to Elijah Peacock for taxes of 1861 and 1863. No deed has been given on these sales. The south half of the parcel was subsequently sold to complainant for tax of 1864, but not deeded. The interest of complainant and the Peacocks passed by force of the grants before mentioned, except any right which may possibly have rested on Butler's purchase and which vested in complainant through Butler's deed to him in May, 1872. By the deed of January, 1856, Joseph Peacock deeded an undivided half to complainant, and they remained tenants in common until the Peacocks deeded J. Peacock's interest to McDonald and others, December 14, 1866. Perry's purchase was during such tenancy, and was the purchase of Joseph Peacock in effect, and subject to the rule stated in regard to No. 1. It was not a tax or tax-title standing against the undivided half in question. If Butler got and preserved an interest, complainant acquired it by the deed of 1872, as before stated, and no other tax interest antedating defendant's purchase from complainant appears.

No. 5. The west half of southeast quarter of section nine, township thirty-eight, range twenty-three. This was sold to

Perry for taxes of 1857 and 1859, but not deeded. Afterwards it was sold to complainant for tax of 1861, and deeded to him January 20, 1866. Complainant's purchase at tax-sale was prior to the conveyance to him by the Peacocks and subsequent to the purchase by Perry, and presumptively cut off Perry's right, if any. Besides, the proof goes to show that Perry bought for Peacock, whose interest has passed to defendants. We must find upon the showing that there was no tax or tax-title standing against the undivided half in question of this parcel.

No. 6. The south half of the northwest quarter of section ten, township thirty-eight, range twenty-three. This sold and deeded to C. W. Butler for tax of 1857, and by him deeded to complainant May 24, 1872. It was again sold to complainant for tax of 1861, and deeded to him January 20, 1866. There can be no question about this piece.

No. 7. The west half of southeast quarter of section ten, township thirty-eight, range twenty-three. This was sold and deeded to C. W. Butler for tax of 1857, and by him deeded to complainant May 24, 1872. It was also sold to complainant for the tax of 1861, and deeded to him April 22, 1873. There is no doubt about this parcel.

No. 8. Lot two of section twelve, township thirty-eight, range twenty-three. This was sold and deeded to C. W. Butler for taxes of 1857 and 1858, and by him deeded to complainant May 24, 1872. It was also sold to Perry for the tax of 1859, but not deeded. By his deed of January 28, 1856, Joseph Peacock deeded an undivided half to complainant, and by deed of October 28, 1862, the other undivided half to Elijah Peacock. Therefore when Perry bought, complainant and Joseph Peacock were tenants in common, and Perry's purchase was the purchase of Joseph Peacock, as before stated in regard to other parcels, and the rule mentioned under No. 1 applies. No tax or tax-title appears to have been standing, either when the bill was filed or

when the mortgage was given, except the Butler claim, acquired and held by complainant in May, 1872.

No. 9. Lot three of section twelve, township thirty-eight, range twenty-three. This was sold and deeded to C. W. Butler for tax of 1857, and by him deeded to complainant May 24, 1872. This needs no comment.

No. 10. Lot four of section twelve, township thirty-eight, range twenty-three. This was sold and deeded to C. W. Butler for taxes of 1857 and 1858, and by him deeded to complainant May 24, 1872. This stands like the last.

No. 11. Fractional section thirteen, township thirty-eight, range twenty-three. This was sold to C. W. Butler for taxes of 1857 and 1858, but not deeded. He, however, deeded to complainant May 24, 1872. It was also sold to Perry for tax of 1859, but not deeded. It was again sold to complainant for tax of 1861, and deeded to him January 20, 1866. Complainant's purchase, being some years prior to Peacock's conveyance to him, presumptively cut off Perry's. Besides the evidence goes to prove that when Perry bought at the tax-sale he bought for Joseph Peacock, and that the latter then held the original title. There was then no tax or tax-title standing, either when complainant filed his bill or when the mortgage was given, except possibly the Butler claim, and this, if it had any force, was acquired by complainant in May, 1872.

No. 12. Lot one, section fourteen, township thirty-eight, range twenty-three. This was sold and deeded to C. W. Butler, for tax of 1857, and by him deeded to complainant, May 24th, 1872. It was also sold to Perry for tax of 1859, but not deeded. It was again sold to complainant for the tax of 1861, and deeded to him January 20th, 1866. The last purchase is *prima facie* good, and presumptively cut off that of Perry. When the mortgage was made, as also when the bill was filed, there was no tax or tax-title standing unless the claim of Butler should be so considered. And that, if it possessed any force, has been acquired by complainant.

No. 13. Lot two of section fourteen, township thirty-eight, range twenty-three. This is in the same predicament as the last.

No. 14. Lot three, section fourteen, township thirty-eight, range twenty-three. This, also, is in the same situation.

No. 15. Lot four, section fourteen, township thirty-eight, range twenty-three.

No. 16. Lots one, two, three, four, of section fifteen, township thirty-eight, range twenty-three. All these parcels have the same history as those numbered thirteen and fourteen.

No. 17. The northwest quarter of section fifteen, township thirty-eight, range twenty-three. This was sold to C. W. Butler for tax of 1856, and deeded to him, and by him deeded to complainant September 24th, 1870. This is of course in good shape.

No. 18. The southwest quarter of southwest quarter of section eighteen, township thirty-eight, range twenty-three. This was sold and deeded to Joseph Peacock for tax of 1857. It was also sold to Perry for tax of 1859, but not deeded. It was again sold to Elijah Peacock for taxes of 1861 and 1862, and not deeded. According to the record, Joseph Peacock was owner of this parcel from his purchase on account of the tax of 1857 until October 28, 1862, when he deeded an undivided half to Elijah Peacock, and was therefore owner when Perry bought, and the proof shows that Perry's purchase was his purchase. All the tax-title interests then were in the Peacocks, and whatever their force passed by the different grants to defendants. There were no taxes or tax-titles, therefore, standing when the mortgage was made.

No. 19. Lot one, section twenty-one, township thirty-eight, range twenty-three. This was sold to Joseph Peacock, but not deeded, for tax of 1857. It was again sold to Perry for tax of 1858 and 1859, but not deeded. January 28th, 1856, Joseph Peacock deeded the undivided half in question to complainant, and these parties remained tenants in common until December 14th, 1866, when the former

deeded his undivided half to defendants, John S. McDonald, Lynch and Semple and Alexander McDonald. The purchase by Perry was for Joseph Peacock, and it occurred during the tenancy in common by the latter and complainant, and was hence subject to the rule before mentioned in regard to parcel No. 1. Whatever interest the Peacocks may have gained passed by the different grants, and consequently there were no taxes or tax-titles standing when the mortgage was given.

No. 20. Fractional section twenty-two, township thirty-eight, range twenty-three. Perry purchased this for taxes of 1857 and 1859, but no deed has been given. The land was owned in common by complainant and Joseph Peacock from January 28, 1856, the date of Peacock's first deed to complainant, until October 28, 1862, when J. Peacock deeded his undivided half to Elijah Peacock, and this purchase by Perry was for Joseph Peacock, and made during such tenancy. No interest was acquired by it. The interest of the Peacocks in the other undivided half passed by the deed of December 14, 1866. No tax or tax-titles were standing against the undivided half in question when the mortgage was made.

No. 21. The northeast quarter of southwest quarter of section eleven, township forty-one, range twenty-five. Perry purchased this for taxes of 1857, 1858 and 1859, but has received no deed. It was next sold and deeded to J. H. Walton for taxes of 1862, 1864, 1865, 1866, 1867, 1868 and 1869, and by him deeded to complainant June 8, 1872. It was again sold to Walton for tax of 1870, and deeded to complainant as assignee April 22, 1873. The purchases by Walton presumptively displaced all right and claim founded on the purchase by Perry, if indeed the latter did not act for J. Peacock, whose interest passed by the grants mentioned. And whatever rights founded on purchases at tax-sales are standing appear to be in complainant.

No. 22. The east half of northwest quarter of section eleven, township forty-one, range twenty-five. This parcel

has · the same history as the last, except that Walton does not seem to have bought for the tax of 1864.

No. 23. The southeast quarter of the northeast quarter of section twenty-four, township forty-one, range twenty-five. This is likewise in the same predicament as No. 21.

No. 24. The southeast quarter of southeast quarter of section thirty-one, township forty-two, range twenty-five. This was sold and deeded to Peter White for tax of 1857. It was again sold, but not deeded, to J. J. St. Clair and C. Goldsmith for tax of 1859, and afterwards to E. Peacock, and not deeded, for taxes of 1861, 1862 and 1863. The Peacocks deeded the undivided half in question to complainant in May, 1864, and he deeded it to Semple, Lynch and McDonald in March, 1867. The other undivided half was deeded by Peacocks to defendants John S. McDonald, Lynch and Semple and Alexander McDonald . in December, 1866. Whatever interest the Peacocks had was accordingly passed. The parcel was, however, sold to complainant ·for taxes of 1865, 1866, 1867, 1868, 1869 and 1870, the three last being after his transfer, and was deeded to him April 22, 1873. These later sales are presumptively sufficient to cut off the purchases by White, and St. Clair and Goldsmith, and "clear up the taxes and tax-titles," and the theory of complainant's case is understood as contemplating that use of them.

No. 25. The southwest quarter of the southwest quarter of section thirty-two, township forty-two, range twenty-five. This was sold and deeded to D. D. Bishop for taxes of 1857 and 1863, and was by him deeded to complainant June 19, 1872. The state of this parcel is plain.

No. 26. The west half of the southeast quarter of section thirty-two, township forty-two, range twenty-five. This was sold and deeded to C. B. White for tax of 1857. It was also sold to Elijah Peacock for taxes of 1860, 1861, 1862 and 1863. By the deed of October, 1862, Joseph Peacock deeded an undivided half to Elijah Peacock, and by their deed of May, 1864, the Peacocks deeded an undi-

32 MICH.—58.

vided half to complainant, which he deeded in March, 1867, to the three defendants.   By their deed of December, 1866, the Peacocks deeded the other undivided half to Semple, Lynch and the McDonalds; hence all the interest of the Peacocks passed.   The land was, however, sold to complainant for taxes of 1865, 1866, 1867, 1868, 1869 and 1870, and deeded to him April 22, 1873, the three last being later than his transfer, and being presumptively sufficient to clear up the White title and displace it.

No. 27.   The southeast' quarter of the southeast quarter of section thirty-two, township forty-two, range twenty-five.   This was sold and deeded to C. B. White for tax of 1857.   It was again sold, but not deeded, to Elijah Peacock for taxes of 1860, 1861, 1862 and 1863.   The Peacocks deeded an undivided half to Semple, Lynch and the Mc-Donalds in December, 1866, and complainant deeded the half in question in March, 1867.   It was also sold to complainant for taxes of 1865, 1866, 1867, 1868, 1869 and 1870, and deeded to him April 22, 1873, the three last being after his transfer, and having the same effect as in the last case.

No. 28.   The southwest quarter of the southeast quarter of section thirty-four, township forty-two, range twenty-five. This was sold to J. J. St. Clair and C. Goldsmith, but not deeded, for tax of 1857.   It was again sold, but not deeded, to Elijah Peacock for taxes of 1861, 1862 and 1863. The Peacocks deeded the undivided half in question to complainant in May, 1864, and he deeded it to the three defendants in March, 1867.   The other undivided half, as before stated, was deeded by the Peacocks to Semple, Lynch and the McDonalds in December, 1866; but it was sold to complainant for taxes of 1865, 1866, 1867, 1868, 1869 and 1870, and deeded to him April 22, 1873, the three last being after his transfer.   The parcel is in the same situation as No. 24 and others.

No. 29.   The northwest quarter of the northwest quarter of section fifteen, in township forty-two, of range twenty-six.   This was sold, but not deeded, to Elijah Peacock for

taxes of 1861, 1862 and 1863. The grant by the Peacocks in December, 1866, to Semple, Lynch and the McDonalds, and in May, 1864, to complainant, who deeded in March, 1867, to the three defendants, passed all the interest of the Peacocks. But the land was sold to complainant for taxes of 1865, 1866, 1867, 1868, 1869 and 1870, and deeded to him April 22, 1873. His interest up to his grant in March, 1867, passed. When the mortgage was made no taxes or tax-titles appear to have been standing, unless there were unsatisfied claims for 1865 and 1866. The last purchases are sufficient to clear up the whole.

No. 30. The northwest quarter of the southeast quarter of section eighteen, township forty-three, range twenty-nine. This was sold and deeded to D. H. Ball for taxes of 1861, 1862 and 1863. The right based on these sales and transfers appears to have been outstanding when the mortgage was given, and to have so continued. Mr. Ball is one of complainant's counsel, and he represents that he is willing to release in case defendants pay complainant the obligation.

No. 31. The southeast quarter of the southeast quarter of section eighteen, township forty-three, range twenty-nine. This was sold and deeded to E. Remington for tax of 1857. It was also sold and deeded to A. Baker for taxes of 1861 and 1862. Again it was sold and deeded to D. H. Ball for tax of 1863, and then to complainant for tax of 1866, and deeded to him September 24, 1870. The Peacocks deeded the undivided half in question to complainant in May, 1864, and the other undivided half to Semple, Lynch and the McDonalds in December, 1866, and complainant was tenant in common, either with Joseph Peacock or Elijah Peacock, from May, 1864, until the deed of December, 1866, the record leaving it uncertain whether the other interest was in Joseph or Elijah. From December, 1866, he was tenant in common with those holding the other undivided half until March, 1867, when he deeded. He was, then, tenant in common at the time of purchasing for the tax of 1866, and not in a position to acquire an

interest by the purchase.    The purchase by Mr. Ball was presumptively good, and sufficient to displace and cut off the purchases by Remington and Baker.    It was outstanding when the mortgage was given, and has continued so.  . He holds the same position as to this parcel as he does to the last.

This examination doubtless might have been greatly abridged, and probably with advantage, but the nature of the case induced me to think it safer to set out descriptions and repeat dates, statements and explanations, than to attempt a shorter and less tedious course.

As it is, the review shows, not of course with the certainty of demonstration, not in a way to exclude possibilities, but with such degree of moral certainty as the case admits of, such reasonable certainty as is afforded by such proofs as have been put in, and on which a decision must be based if any decision is made, *first,* that as to several parcels no taxes or tax-titles were standing when the mortgage was made; *second,* that as to others there were *prima facie* tax-title interests outstanding at that time, but which were " cleared up" before the bill was filed; *third,* that as to others still there were *prima facie* outstanding tax-title interests which are now susceptible of being " cleared up" by proper transfers by complainant and his counsel Mr. Ball, and that without such transfers tax-titles will be still standing.

Some strong objections to the defense, and going to the validity of the tax-proceedings in the three counties for a number of years, have not been considered.    They reach a great way beyond this cause, and the decision now called for does not imperatively require their solution.

The complainant was entitled .to foreclose on account of the first obligation, and he appears to be now in a situation to meet the requirement in the restrictive clause of the second.    He was apparently not in such situation when the bill was filed.

Under the circumstances, and by analogy to the rule in cases of specific performance, which allows relief if the party

is able to make a good title before final decree *(3 Par. on Con., 381 and notes, last ed. ; Fry on Sp. Per., 2 Am. ed., p. 473, § 871, 872, 873)*, it appears to me that complainant should have reasonable time to cause to be transferred to his mortgagors, subject to his mortgage, the Ball tax-title interest hereinbefore mentioned, and reasonable time for himself to transfer to his mortgagors, subject to his mortgage, the tax-title rights and interests which he obtained from Butler by the deed or deeds mentioned of May 24, 1872, and such as he obtained by the deed or deeds from the state mentioned of April 22, 1873, and such as he acquired by the deed or deeds from Butler referred to of September 24, 1870, and those he got by the deed or deeds from Walton of June 8, 1872, and by deed or deeds of April, 1873, as Walton's assignee, and those he obtained by the deed or deeds of June 10, 1872, on account of the Bishop purchase.

In case these transfers are made, I think he should be allowed to foreclose on account of both obligations, but ought not to recover interest on the second subsequent to the first day of August, 1869. In case of failure to make or cause to be made these transfers, then I think his bill should stand dismissed as to the second obligation, but without prejudice. In either case he should be allowed to foreclose as to the first obligation for principal and interest. The claim on account of subsequent taxes, paid as was said to protect the mortgage, is understood to be waived. If not, there would be much difficulty in drawing any distinct line between tax matters of that sort relating to the undivided half in question and those needful to meet the necessities of the restriction in the obligation.

If the court below had decreed for complainant on the eight thousand dollar demand, I should have thought differently from what I do now upon the question of costs. As the case is situated, I am of opinion that the decree of the circuit court should be reversed, and that a decree should

be entered here in conformity with the views here stated, and allowing complainant the costs of both courts, and that the case should be remanded for further proceedings.

The other Justices concurred.