## STATE OF VERMONT.

v.

## A. E. HARRINGTON.

January Term, 1896.

*Constitutional law.    Licensing of itinerant vendors.*

1.  The legislature may impose a license upon one occupation and not upon another, so long as no discrimination is made among those engaged in the occupation taxed.

2.  The amount of the license fee is in the discretion of the legislature, and the court cannot declare the act unconstitutional because in its opinion the amount is excessive.

3.  The granting of a license may be made dependent upon the discretion of a local board, like the aldermen of a city or the selectmen of a town.

4.  No. 59, Acts 1894, requiring "itinerant vendors" to deposit $500 with the State treasurer and take out a State license and in addition to obtain a local license in each town or city, which may be granted or refused in the discretion of the local governing board, is constitutional.

Information for violation of No. 59, Acts 1894, requiring "itinerant vendors" to take out license.    Heard upon general demurrer at the June term, 1895, Orange county, Rowell, J., presiding.    Demurrer overruled.    The respondent excepts.

*Darling & Darling* for the respondent.

Any citizen may pursue any lawful calling unfettered by legislative enactment.    Cooley, Const. Lim., 744.

The government is for the common benefit and cannot discriminate against a class. 3 Coke Inst., 161; *Darcy* v. *Allain*, 11 Coke Rep. 84.

No distinction can be made between itinerant vendors and resident vendors. Cooley, Const. Lim., 481 *et seq.*; *Lin Sing* v. *Washburn*, 20 Cal. 534; *State* v. *Duffy*, 7 Nev. 349; *Mayor* v. *Howard*, 15 Md. 376; *Barbier* v. *Connolly*, 113 U. S. 27; Slaughter House Cases, 83 U. S. 394; *Commonwealth* v. *Alger*, 7 Cush. 84; *Thorpe* v. *R. R.*, 27 Vt. 149.

The act violates the spirit of the federal constitution wherein it prohibits the laying of duties and imposts. *State* v. *Pratt*, 59 Vt. 590; *Brown* v. *State of Maryland*, 12 Wheat. 419; *Welton* v. *State of Missouri*, 91 U. S. 275; *Robbins* v. *Shelby Co. Taxing Dist.*, 120 U. S. 497.

The law is oppressive and therefore void. *Calder* v. *Bull*, 3 Dallas, 386; *Wilkinson* v. *Leland*, 2 Pet. 657.; *Goshen* v. *Stonington*, 4 Conn. 225.

*D. C. Hyde*, state's attorney, and *John H. Watson* for the state.

The state in the absence of constitutional inhibition, may tax trades and occupations. *Fickling* v. *Taxing District of Shelby Co.*, 145 U. S. 1; Cooley, Taxation, 384-392; *Howe Machine Co.* v. *Gage*, 100 U. S. 676; *Soon Hing* v. *Crowley*, 113 U. S. 703; *Hayes* v. *Missouri*, 120 U. S. 68; *State* v. *Pratt*, 59 Vt. 590.

That the goods are owned by the citizens of another state is immaterial so long as no discrimination is made. *State* v. *Emert*, 103 Mo. 241; *Howe Machine Co.* v. *Gage*, 100 U. S. 676; *Commonwealth* v. *Gardner*, 133 Penn. 284; *Rash* v. *Farley*, 91 Ky. 344.

The amount of the tax is within the discretion of the legislature. Cooley, Taxation, 410-413; *Wilmington* v. *Roby*, 8 Ired. 250; *Commonwealth* v. *Gardner*, 133 Penn. 281;

*Butler* v. *Chambers*, 36 Minn. 69; *People* v. *Budd*, 117 N. Y. 1; Cooley, Taxation, 384-5; *State* v. *French*, 109 N. C. 722; *State of Maine* v. *Grand Trunk Rd. Co.*, 142 U. S. 217; *Home Ins. Co.* v. *New York*, 134 U. S. 594; *State* v. *Stevenson*, 109 N. C. 730.

TYLER, J.   The information is based upon No. 59, laws of 1894, in which the words "itinerant vendors" are construed to mean and include all persons who engage in a temporary or transient business, either in one locality or in traveling from place to place selling goods, wares and merchandise, and who, for the purposes of carrying on such business, hire, lease or occupy any building or structure for the exhibition and sale of such goods, etc.   The law excludes from its provisions sales made to dealers by commercial travelers and selling agents in the usual course of business, and to *bona fide* sales of goods, etc., by sample for future delivery, hawkers on the streets and peddlers from vehicles.   It requires that every itinerant vendor, who proposes to do business in this state, shall deposit five hundred dollars with the state treasurer, after which deposit, upon application in prescribed form and the payment of twenty-five dollars as a state license fee, he is entitled to an itinerant vendor's license from the state treasurer, authorizing him to do business in this state for one year.   He may then apply to the clerk of the city or town where the goods are kept for sale, for a local license.   With his application to such clerk he must file a true statement under oath of the average quantity and value of his stock; the clerk submits the statement to the listers for their valuation; their certificate of valuation is then submitted to the board of aldermen or selectmen, "who must forthwith act upon such application, and if in the judgment of such board such application should be granted, such city or town clerk may be authorized to issue a license to such applicant," who shall pay therefor a sum ascertained by the clerk by a computation based upon

the valuation of the listers, in the ratio and at the rate of the last preceding assessment of taxes. It is provided that every itinerant vendor who sells, exposes or advertises for sale, goods, wares and merchandise without a state and local license, shall be liable to fine or imprisonment or both. The local license in any event expires on the last day of the next March. The deposit of five hundred dollars is subject to the payment of all fines and penalties that may be incurred by the licensee through violations of the law. Upon the expiration of the state license the state treasurer returns to the licensee the remainder of the deposit after deducting all fines and penalties.

The case comes here upon the sole question of the constitutionality of the law.

The respondent's counsel contend that the law is in violation of both the state and federal constitution; that it is an encroachment upon the natural, inherent and inalienable right of citizens to acquire and possess property through the agency of labor; that it discriminates between itinerant vendors and resident vendors, and between classes of itinerant vendors, and thus violates that portion of article 7 of the constitution which declares that "government is, or ought to be, instituted for the common benefit, protection and security of the people, nation or community, and not for the particular emolument or advantage of any single man, family or set of men, who are part of that community"; that it is in conflict with the inhibition of the federal constitution that, " No state shall, without the consent of Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws;" that the requirement of a deposit of five hundred dollars deprives an itinerant vendor of his property without due process of law; that it violates the 14th amendment of the federal constitution which commands that, " no state shall make or enforce any laws which shall abridge the priv-

ileges or immunities of citizens of the United States ;" that the requirements of the law are unjust and oppressive, and violate the natural as well as the constitutional rights of the citizen.

The legislature had in view the class of persons who go from place to place and temporarily occupy rooms for the exhibition and sale of goods, and enacted the law in the apprehension that there was fraud in such sales. Its title is, "An act to prevent and punish fraud in the sales of goods, wares and merchandise at public or private sale by itinerant vendors, and to regulate such sales." It seems to have been passed as a police regulation, though the local license fee is equivalent to taxation upon the grand list in each town in which such license is taken.

. The police power of a state extends beyond the protection of health, peace, morals, education and good order. It is the power to govern men and things within the limits of its dominion. It comprehends all those general laws of internal regulation necessary to secure peace, good order, the health and comfort of society, and the regulation and protection of all property in the state ; its power in these respects is supreme. Desty on Taxation, 1877 and cases cited ; Cooley's Cons. Lim. 704.

" Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law, as the legislature, under the governing and controlling power vested in it by the constitution, may think necessary and expedient. * * * The power we allude to is the police power, the power vested in the legislature by the constitution to make, ordain and establish all manner of wholesome and reasonable laws, statutes and ordinances, either with penalties, or without, not repugnant to the constitution, as it shall judge to be for the welfare of the commonwealth, and of the subjects of the same. It is much easier to perceive and realize the existence and sources of this power than to mark

its boundaries, or prescribe limits to its exercise." C. J. Shaw in *Commonwealth* v. *Alger*, 7 Cush. 53.

The law is clearly stated by Redfield, C. J., in *Thorpe* v. *R. & B. R. Co.*, 27 Vt. 140 :

"This police power of the state extends to the protection of the lives, limbs, health, comfort and quiet of all persons, and the protection of all property within the state.     According to the maxim, *Sic utere tuo ut alienum non laedas*, which being of universal application, it must of course be within the range of legislative action to define the mode and manner in which every one may so use his own as not to injure others."

"The powers of the state to impose restraints and burdens upon persons and property in conservation and promotion of the public health, good order and prosperity, is a power originally and always belonging to the states, not surrendered by them to the general government nor directly restrained by the Constitution of the United States, and essentially exclusive." *Wilkerson* v. *Rahurer*, 140 U. S. 545.

The question is whether this law is within the scope either of the police or taxing power of the state. If it is beyond such scope and unconstitutional, it is in respect to the licenses, or the special deposit with the state treasurer, or the authority conferred on the board of aldermen or selectmen to grant or refuse local licenses according to their judgment.

Citizens have not an inherent and inalienable right to acquire and possess property without the legislative restraint of taxation. It is also true that the property alone is not liable to taxation. A tax may be assessed on the privilege of carrying on a particular business, and when it takes this form convenience in collecting will commonly require payment of a license fee as a condition to the right to carry on the business. Cooley on Taxation, 384 *et seq.* ; 5 Wall. 472, U. S. License Tax Cases.

"The mode of levying, as well as the right of imposing taxes, is completely and exclusively within the legislative power, which, it is to be presumed, will always be exercised with an equal regard to the security of the public and in-

dividual rights and convenience." *Cowles* v. *Brittain*, 2 Hawks (N. C.) 204.

Judge Cooley remarked in *Youngblood* v. *Sexton*, 32 Mich. 460, that while a statute might have revenue for one object, the exercise of the police power of the state might be another. So if this law were to be considered as a mere revenue law it must be in the light of the settled rule, as laid down by all writers upon taxation, that everything to which the legislative power extends may be the subject of taxation, whether it be person, property, franchise, privilege, occupation or right; that not only is the power unlimited in its reach as to subjects, but in its very nature it acknowledges no limits, and may be carried to any extent which the government may find expedient. It may therefore be employed again and again upon the same subjects, even to the extent of exhaustion and destruction, and thus become in its exercise a power to destroy. Cooley on Taxation, 384, and cases cited in notes; *Nathan* v. *Louisiana*, 8 How. 73, License Tax Cases, *supra* ; *Union Pac. R. R. Co.* v. *Peniston*, 13 Wall. 5 ; *New Orleans* v. *Telephone Co.*, 8 Am. St. R. 508.

No employment is exempt from taxation. The state has an undoubted right to determine what employments shall be permitted, and to forbid those which are deemed prejudicial to the public good. Rules for the conduct of the most necessary and common occupations are prescribed when from their nature they afford peculiar opportunities for imposition and fraud. The state has authority to make extensive and varied regulations as to the time, mode and circumstances in and under which parties shall assert, enjoy, or exercise their rights without coming in conflict with any of those constitutional principles which are established for the protection of private rights or private property. Cooley's Cons. Lim., 742 *et seq.*

That all occupations may be taxed, when no restraints are imposed by the constitution, is settled beyond controversy. It is no valid objection to a tax on business that its operation

will not be uniform ; but it must operate uniformly upon each class taxed. Cooley's Cons. Lim., 609, note.

A license tax cannot be deemed unequal because reaching one occupation only, if it reaches all who follow that occupation.   *   *   *   It would be only when individuals of the class were singled out for exemption, that the inequality would be manifest. Cooley on Taxation, 128.   It was said by Judge Cooley in *Youngblood* v. *Sexton, supra,* that occupation taxes are no violation of the rule of uniformity.   *Worth* v. *R. R. Co.,* 89 N. C. 301.

Desty on Taxation, 1383, says : '' Municipal corporations may tax a business or occupation of one class and omit to tax that of another class ; and may classify merchants, and tax each class in its discretion ; but a tax on any occupation must reach all who follow it, all of a class of persons or things.''

The court said in *Ficklin* v. *Taxing Dist. Shelby County,* 145 U. S. 1, '' No doubt can be entertained of the right of a state legislature to tax trades, professions and occupations in the absence of inhibition in the state constitution in that regard.''   *   *   *

Quoting again from *Youngblood* v. *Sexton* : '' A particular business may be taxed, while others are spared, not only because for any reason it can best bear the burden, but also because such surroundings attach themselves to the business taxed as to render the discouragement and discipline of heavy taxation wise and politic.''   He instanced the taxing of state banks out of existence, which was sanctioned in *Veasie Bank* v. *Fenno,* 8 Wall. 533.

It is laid down in 2 Dill. Mun. Cor., s. 793, that the usual provisions in the constitutions of the different states concerning taxation do not prohibit the legislatures from imposing, or authorizing municipal corporations to impose taxes upon trades, special professions and occupations, and that authority to tax all persons exercising any profession may be executed to the extent of taxing each member of a firm separately.

The right of the legislature to impose a license tax upon

peddlers was recognized in *State* v. *Hodgdon*, 41 Vt. 139, and *State* v. *Pratt*, 59 Vt. 560. In the latter case that part of s. 3951, R. L., which required a license of a person peddling tea of foreign growth, was held in conflict with the federal constitution as attempting to regulate commerce between the states.

"The legislature, if it does not make discriminations in violation of the state constitution, may authorize municipal corporations to tax transient traders or itinerant dealers and peddlers ; and such tax is not in violation of the constitution of the United States, although the property be brought from another state ; provided, it must be added, it does not unlawfully discriminate in favor of the resident and against the nonresident citizen." Dill. Mun. Cor. 744; *Ward* v. *Maryland*, 12 Wall. 418; *Walton* v. *Missouri*, 91 U. S. 275; *Webber* v. *Virginia*, 103 U. S., 344, and numerous other cases cited in note.

It was held in *Roby* v. *Wilmington*, 8 Ired. Law, 250, that a license may be imposed on all transient persons keeping "stores" in the town, imposing it as a police regulation, though called a tax in the statute.

*State, ex rel. Toi,* v. *French*, (Mont.) and *State* v. *Wheelock*, (Ia.), 30 L. R. A. 415, 429, have exhaustive and valuable notes upon this subject. In the former case the question was whether imposing the payment of license fees upon laundrymen violated the uniformity clause in the state constitution in respect to taxation. It was held that a license fee was not a tax within the constitutional restrictions. In the latter case a license fee of $100 per annum, charged itinerant vendors of drugs, who professed to cure or treat all diseases, was held reasonable, and not an unconstitutional interference with interstate commerce, though the drugs were in original packages brought from other states.

In the annotations to these cases these general rules are deduced : that "The power of a sovereign state to fix license

fees at such figures as it may see fit would appear to be unlimited except in cases in which its exercise would conflict with some constitutional provision." * * *

That " statutory and charter restrictions upon the power to tax, like constitutional ones, do not apply to license fees required for the purpose of regulation." Among the notes of cited cases are the following :

The legislature of a state may impose such license taxes upon privileges as it may choose. *Columbia* v. *Beasly*, 1 Humph. 232, 34 Am. Dec. 646.

And it may, in regulating any matter which is a proper subject for the police power, impose such sums for licenses as will operate as a partial restraint on the business or on the keeping of a particular kind of property. *Tenney* v. *Lenz*, 16 Wis. 566.

And a requirement of a license fee from peddlers, classifying them as foot peddlers, peddlers with one-horse cart or wagon, and peddlers with two-horse cart or wagon, charging a different rate for each, is a police requirement and a valid exercise of a power to regulate, and not in conflict with a constitutional requirement of uniformity of taxation upon all of a class. *Kneeland* v. *Pittsburgh* (Pa.), 10 Cent. Rep. 421.

The constitutional requirement as to uniformity of taxation does not prevent a municipality from discriminating in fixing rates for licenses for the transaction of different classes of business, and imposing a higher rate upon one class than upon another. *Ex parte* Hurl. 49 Cal. 557.

A license tax upon different industries, varying in amount upon each, but being the same upon the subjects of the same class, is not unconstitutional for want of uniformity. *Hadtner* v. *Williamsport*, 15 W. N. C. 138.

And a license tax imposed by a municipality, endowed with discretion on the subject, will not be declared unreasonable by the courts merely because they deem it unwisely large. *Cooper* v. *District of Columbia*, 4 MacArth. 250.

And when the legislature confers upon a municipal corporation the power to pass ordinances of a special and defined character, if the power thus delegated be not in conflict with the constitution, an ordinance passed in pursuance thereof cannot be impeached as invalid because it would have been regarded as unreasonable if it had been passed under the incidental powers of the corporation or under a grant of power general in its nature. *Ex parte* Chin Yan, 60 Cal. 78.

So, a license fee of $200, imposed upon the business of vending butcher's meats, is not unauthorized, oppressive, or in restraint of trade, when required under a statute empowering municipalities to fix the fee for licenses at from $5 to $500. *St. Paul* v. *Colter*, 12 Minn. 41, 90 Am. Dec. 278.

Cases are cited in these notes where *municipal ordinances* have been held unconstitutional and void on account of the excessive amount of license fees imposed, but few, if any cases are cited where *statutes* have been declared unconstitutional for this reason.

The imposition of license taxes is, upon abundant authority, within the constitutional authority of the legislature, though it may interfere, as the payment of all taxes directly does, with the acquisition of property. The law is not a " class " law, for all persons of the class of itinerant vendors, whether resident, or non-resident, are subject alike to its requirements. Peddlers, hawkers and drummers are not of this class. The occupation of itinerant vendors, from the manner in which it is conducted, is as distinct from that of resident vendors as is that of peddlers and auctioneers. It imposes no burden upon interstate commerce, as the occupation licensed is not directly concerned therein. It makes no discrimination between our own citizens and citizens of other states, and therefore does not violate the command of the federal constitution that, " no state shall make or enforce any laws which shall abridge the privileges or immunities of citizens of the United States." The law could not be deemed oppressive in

respect to licenses if only the state and one local license fee were required for the year; but it must be remembered that each local license fee is for the privilege of doing business in the town in which it is payable.

The money deposited with the state treasurer is returnable to the licensee upon his surrender of the license, less the amount of fines that may have been imposed and costs, so it cannot be held that he is deprived of property without due process of law. The requirement of this deposit is not more oppressive than a requirement of a statute of Illinois, that operators of butter and cheese factories on the co-operative plan shall file with the circuit clerk a bond in the sum of $6,000, with two sureties, conditioned that the company shall make monthly statements of the amount of the product and sales, prices received and dividends earned. This was held to be a proper exercise of police power; that the fact that the law regulates trade, or in some degree operates as a restraint upon trade does not render it obnoxious to any constitutional provision; that a statute is not subject to the objection that it is not general because it applies to a class of persons, if it applies to all persons similarly engaged.

An ordinance of the city of Chicago which requires auctioneers to pay an annual license fee of $200, and to give a bond in the penal sum of $1,000, with two sureties, to be approved by the mayor, conditioned for the due observance of the ordinance, was held reasonable and valid as a police regulation. *Wiggins* v. *Chicago*, 68 Ill. 369.

The statute of a state relating to oleomargarine, its manufacture and sale, was held to belong to the police power of the state for the prevention of fraud in *Powell* v. *Pennsylvania*, 127 U. S. 678. See notes to *State* v. *Goodwill*, 26 Am. St. R. 870.

Our statute is nearly an exact transcript of the Massachusetts act of 1890; the only material difference is that under the latter the city or town clerk, on application, after ascertaining the value of the stock of goods and the amount to be

paid for the license according to the rate of the last preceding tax levy in his city or town, "shall issue" a license upon payment to him of the amount so ascertained. The Supreme Court, in *Commonwealth* v. *Crowell*, 156 Mass. 215, upheld the law as a proper police regulation.

Connecticut has a statute providing that city and town authorities may issue licenses to such persons as they find proper to engage in a temporary or transient business, for the sale of goods, wares and merchandise, for a term not exceeding a year, on the applicant paying a fee not less than $1, nor more than $100, as the authorities may direct, except in the sale of farm and sea products, making it a misdemeanor to engage in such business without a license. The Supreme Court, in *State* v. *Conlon*, 33 Alt. R. 519, declared the act void because, as it said, "it permits the local authority to grant a license to one and to refuse it to another, in pursuance of a discretion unguided and unrestrained by law," and  *  *  *  "the absolute power to fix the license fee at $1, for one year, or $100 for one day," thus making it nominal or prohibitive at pleasure. *Yick Wo* v. *Hopkins*, 118 U. S. 356, is authority for this holding, though it is not cited in the opinion. In that case an ordinance conferred upon supervisors arbitrary power, at their own will and without the exercise of discretion in the legal sense of the term, to give or withhold consent to the carrying on of laundry business, within the limits of the city and county of San Francisco, and make it unlawful to carry on such business without such consent. This was held unconstitutional. The court said that, "the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails."  *  *  *

The Connecticut court states the general rule that, "The legislature has power to require a license for the transaction

of any business, either for the purpose of raising a revenue, or for the purpose of regulating the conduct of such business as public interests may demand." It admits the power in the legislature, " first, to regulate the conduct of all business, or of any particular business, harmless in its nature, and which every citizen has the right to carry on ; and, second, to regulate, even to the extent of prohibition, any business in its nature injurious to the public." But the court says that   *   *   *   " the exercise of that power in the two cases is governed by different principles. In the latter case the controlling object is giving to the public that protection from danger which the state is bound to give, and ordinarily the legislature must be the judge of the degree of danger and of the required protection. It may restrict the business by requiring large fees, or by other protective regulations." The court makes the point that the act draws no line of distinction except between a business that is temporary and a business that is not temporary, without defining the former or showing that it is more dangerous to the public than the latter. The information was for the sale of boots and shoes without license, and the court construed the act to deal with temporary or transient business for the purpose of regulating an ordinary and lawful business in which all citizens have a right to engage, and held the act to be in violation of the Bill of Rights, s. 1, declaring all men equal in rights, and that no man or set of men are entitled to exclusive privileges, which is substantially like the constitutional provision of Massachusetts and of this state.

The court conceded the full legislative power to license and regulate a lawful business, as well as a business which in its nature is dangerous to the public, though its regulations must be governed by different principles in the two cases ; therefore, had the Connecticut statute, like ours, defined " temporary or transient business," granted no exclusive privileges to any persons of the class of transient

dealers, and referred the granting of licenses to the legal discretion instead of the mere caprice of the local authorities, possibly it might have been held constitutional. At all events that statute differs from ours in important particulars.

Section 6 provides that upon such vendor's filing his sworn application, depositing $500 and paying $25 the state treasurer *shall* issue a license to him, and s. 9 provides that the city or town clerk, when authorized by said board and upon payment of the license fee, *shall* issue a license, but it provides, that though such vendor has complied with every requirement of the law down to the time the aldermen or selectmen " act upon such application," they may then refuse the license if in their judgment it should not be granted.

The act does not confer upon this board authority to grant or refuse licenses at their mere option, as in *Yick Wo* v. *Hopkins*, and in *State* v. *Conlon*, *supra*. Here the board are required to act forthwith upon the application and to exercise their judgment whether a license should or should not be granted. If they should refuse to act in any case they could doubtless be moved by *mandamus*. When they have acted and passed their judgment upon the application, resort to *mandamus* cannot be had because they are invested with *quasi* judicial power, and the legal presumption is that they have acted judiciously.

No point is made in the respondent's brief that it is not competent to leave the granting of licenses to the judgment of the board of aldermen or selectmen. Discretion should be reposed in some person, otherwise books, pictures and other merchandise of an immoral character might be offered for sale.

Whether there is reason to apprehend that vendors who go about from place to place, disposing of goods by auction and private sale, will deceive and defraud the public as to the quality of the goods sold, the legislature, as was said by the court in *State* v. *Conlon*, must be the judge.

It must be conceded that the requirements of this law are oppressive upon the class of persons known as itinerant vendors, in respect to the deposit of $500 and in the payment of a license fee in each town where business is transacted.    But the question is not whether the law is oppressive or unjust, but whether it contravenes any provision of the state or federal constitution.    If it does not, the court has no right to declare the act void, for the constitution alone is the boundary of the power of the legislature.    Cooley's Cons. Lim. 10, says:

" The government of the United States is one of enumerated powers, the national constitution being the instrument which specifies them, and in which authority should be found for the exercise of any power which the national government assumes to possess.   In this respect it differs from the constitutions of the several states, which are not grants of powers to the states, but which apportion and impose restrictions upon the powers which the states inherently possess."

It is not sufficient to say that the law violates the spirit of the constitution.

" Courts are not at liberty to declare a statute unconstitutional because, in their opinion, it is opposed to a spirit supposed to pervade the constitution but which is not expressed in words; nor because it is opposed to the fundamental principles of republican government unless these principles are placed by the constitution beyond legislative encroachment."    *State* v. *Corbett*, 24 L. R. A. 500 (Minn.).

It was said in *Youngblood* v. *Sexton*, that courts cannot annul tax laws because of their operating unequally and unjustly; that if they could, they might defeat all taxation. See Cooley's Cons. Lim. 200, 587, 706 and notes.

We are unable to find that the law in question, as a police regulation, is in contravention of any constitutional provision.

We have incidentally considered the authority of the legislature in respect to taxation, but it will be borne in mind that this law imposes a license fee and not a tax.    The dis-

tinction will also be observed between the cases where license fees have been imposed by municipal ordinances without charter or other legislative authority and those where such fees are imposed by the state through legislative enactment. In the latter case, the reasonableness of the fees in respect to their amount must be left with the sovereign state.

*The judgment overruling the demurrer and adjudging the information sufficient is affirmed. The judgment that the respondent is guilty is pro forma reversed and cause remanded.*

Taft, J., dissents.