## Harriet W. Pratt v. William H. Tefft.

*Dower. Non-resident.* A woman residing out of this State at the time of her husband's death is not entitled to dower of lands, lying within this State, of which he had been seized, but which he had conveyed without her joining in the deed.

*Construction of Statutes.* Chap. 66, sec. 21, Rev. Stat. of 1846 (*Comp. L.* § 2792) contains 'the following language, "any woman, residing out of the State, shall be entitled to dower of the lands of her deceased husband, lying in this State, of which her husband died seized, and the same may be assigned to her, or recovered by her, in like manner as if she and her deceased husband had been residents within the State at the time of his death." Sec. 15 of Part 2, Title 1, ch. 2 of the Rev. Stat. of 1838 contains the same provision, except that the phrase, "of which her husband died seized," is wanting. This addition to the former statute is to be supposed to have had a motive, which can be collected only from the language of the two sections, with such light, if any, as may be thrown upon it by other provisions of the two statutes. The former section allowed dower generally, that of the revision of 1846 allowed it in lands, "of which her husband died seized." It seems impossible to construe this additional phrase otherwise than as excluding dower in the same circumstances, in any other lands. The non-residence intended by this statute is at the time of the husband's death, and not at the time of the alienation of the land.

*Affirmative clause implying a negative.* The clause "of which her husband died seized," although affirmative in form, could have no affirmative effect whatever, for the reason that any disability of alienage or non-residence was already fully removed by the same statute. The only effect it can have is by the negative implication which results from it, and which is a necessary one, and as much a part of the statute as if it had been expressed.

*Definition. "Recovered," meaning of.* The statute refers to dower being "assigned" to the widow, which might be done by the Probate Court, or "recovered" which includes clearly the recovery by action as in other cases of the right of dower.

*Heard October 10th,* 1865. *Decided April 17th.*

Error to Wayne Circuit.

The facts of the case are fully stated in the opinion of the Court.

*Theodore Romeyn,* for plaintiff in error.

1. Until the act of 1846, the widow of a citizen of the United States, although not residing in Michigan, by the organic law of the Territory of Michigan and subsequent legislation of the territory and state, was entitled to dower. No distinction existed between the widow of a resident of Michigan, and the widow of a resident of any other state or territory of the United States.—1 *Mich.* 1; 4 *Iowa,* 381; 11 *Ohio,* 219.

2. The act of 1846, (*Rev. Stat.* 270, § 21,) was not intended to deprive the widow of a non-resident of lands aliened by her husband in his life time, but merely to restrict the remedy for the assignment or recovery of her dower.

This enactment should be strictly construed when it is sought to be used to destroy the right of dower.

*a.* As altering the common law.

*b.* As opposed to the general policy of the law on the subject of dower.

*c.* As making an impolitic and unusual distinction between our own citizens and the citizens of other States, placing the latter in a worse position than an alien.

The different sections of the act, on the subject of rights to dower and remedies for its recovery, seem clearly to imply that the Legislature did not intend to deprive the wife of a non-resident of her dower, but merely to restrict the remedy; because,

*a.* The statute (§ 2772) is explicit, and gives the right to *any* widow.

*b.* It provides for a summary assignment of dower by the Judge of Probate when the husband died seized, and the right to dower is not disputed (§2799).

When these facts did not concurrently exist, even a resident widow was driven to an action.

*c.* This provision is similar to that in the *Revised Statutes of* 1838, 263, § 3. That was taken in substance from the Massachusetts Revised Statutes. The rule and the reason for it are stated in 9 *Mass.* 9; 13 *Id.* 413.

We find similar provisions in the statutes of other States.— *Maine Rev. Stat. ch.* 95; *Public Laws of Rhode Island,* 190; 3 *N. H.* 163.

*d.* But the Revised Statutes of 1838 contained an anomalous provision on this subject. *See sec.* 15, *p.* 265. The fact of marriage might be disputed; so, also, the execution of a deed under sec. 8, p. 264. These were not suitable matters for a Probate Court to decide.

Moreover, the language of sec. 15 is ambiguous. It would bear the construction that the non-resident widow might have her dower assigned by the Probate Court, generally, without reference to the seisin of the husband at the time of his death. Hence the propriety of a change in the law. The section, as it stood, declared two things,—

*First.* Alienage should not bar the right of dower. This was changing the common law.

*Second.* A declaration that a resident in another state should be entitled to dower, and that she should be entitled to the same remedies as a resident.

It is plain that the latter part of this section was not intended to confer on the non-resident the *right* of dower. This existed under the old law, and was recognized by section 1. It was a declaration as to the remedy, with a *recognition* of her right.

*e.* This leads us to the true construction of sec. 21 in Rev. Stat. of 1846, p. 270. Reading this in connection with sec. 8, p. 268, and with the provisions in the Rev. Stat. of 1838, is it possible to infer that the Legislature intended, by the insertion of the phrase "of which the husband died seized," *in this* 21*st section,* to destroy the scope of the 1st section, change the whole policy of the law, and give dower to an alien, while refusing it to the citizen of a sister State? *See* 6 *McLean,* 425.

*f.* We ask for the application of the principle that all parts of the same act shall be construed together, and we refer to the different provisions of this law, as sections 1, 7, 8, 12.

*g.* No argument can be founded on sec. 13, Rev. Stat. of 1846. There is the same provision in Statutes of 1838, 263, sec. 7, and confessedly, under that code, the widow of a non-resident was entitled to dower.

*h.* We ask the Court to look to the *consequences* of refusing dower to a non-resident. As in this case, the husband of a helpless lunatic may deprive her of what would have been her rights, by removal to another State.

14 MICH.—V.

3. If the statute be construed as depriving a non-resident of dower, its terms admit of a distinction between the case of a party non-resident *at the time of the seisure and alienation,* and one who afterwards removes from the State. In the latter case, the marriage of the husband must be presumed to be known. His *subsequent* unforeseen removal from the State should not be allowed to give to the purchaser, at the cost of the wife, an interest for which he never paid, and which he did not contemplate. The words of the statute can be construed as applying to the case of a woman whose *general* residence was out of the State, and whose relations to the husband might not have been known to the purchaser.

*D. C. Holbrook,* for defendant in error.

The only question presented is, whether a woman residing out of the State shall be entitled to dower of the lands of her husband lying in this State, of which her husband *was not* seized at the time of his death.

The Revised Statutes of 1838, p. 265, sec. 15, allowed dower in such cases. This section reads, " *and any woman residing out of this State shall be entitled to dower in the lands of her deceased husband lying within the State.*"

The Revised Statutes of 1846, p. 270, sec. 21, first changed this law and restricted the right by adding to the law of 1838 the words " *of which her husband died seized.*"— *Comp. L.* 853, §2792.

The provisions contained in prior sections would allow dower in this case, but it is contended that this provision, speaking specially of *non-resident* women, and changing the previous law by adding the words, " *of which her husband died seized,*" is entitled to a construction by itself, without connection with, or reference to other parts of the law on this subject; that it is entitled to have *some* effect, and it is to have a construction of some kind. If this is correct, then there can be no question that the plaintiff in that case is not

entitled to dower by any fair construction of this particular addition to, and restriction of the previous law.

The change is not unreasonable, as the titles to land were from necessity changing hands from non-residents to residents, and if the husband was a resident the law makes the wife also a resident, and she had the benefit of such residence.

This change, however, prevented impositions being practiced by persons who were not residents, for the reason that, whether grantors were married or not, purchasers could not know or ascertain as well as if such persons were residents.

The laws of this State protect the resident widow in the avails of lands sold in another State, as well as confirming her right of dower.

The defendant in error deems it sufficient to urge that the words "of which the husband died seized" mean something, and if *anything*, the effect is to exclude dower in lands of which a non-resident husband was not at his death seized.— 6 *McLean*, 442.

CHRISTIANCY J.

This was an action of ejectment brought by the plaintiff below, (also plaintiff in error,) for the recovery of her dower, as the widow of William A. Pratt.

The facts are found by special verdict, and in legal effect may be stated briefly thus: The marriage took place in this State about the year 1844. The husband of the plaintiff became seized of the premises in question in 1857, and conveyed the same to the grantor of the defendant in 1858, the plaintiff not having joined in the deed nor since released her dower. The residence of the husband and wife continued in this State until after the conveyance by the husband. They afterwards removed to the State of New York, where they continued to reside until 1861, when the husband died in the city of New York.

The only question is whether, upon these facts, she is entitled to dower in these lands. It is admitted that, at com-

mon law as well as under the Revised Statutes of 1838, (had they continued in force,) her right would have been clear, and it would have been equally clear under the revision of 1846, had she continued to reside in this State until the death of her husband.

By the Revised Statutes of 1838, part 2, title 1, ch. 2, sec. 15, it was enacted ; · "The alienage of a woman shall not bar her right of dower, and any woman residing out of the State shall be entitled to dower in the lands of her deceased husband lying within the State, and the same may be assigned to her or recovered by her in like manner as if she and her deceased husband had been residents within the State at the time of his death."

In the Revised Statutes of 1846, ch. 66, section 21, we have the same provision as the section quoted above, with the single exception, that after the words "lying within the State," and before the words "and the same may be assigned," &c., the following additional clause is inserted, viz.: "of which her husband died seized."

We must presume that the legislature which adopted the revision of 1846 were not satisfied with the provision as it stood in the section above quoted from the revision of 1838, and that this clause was therefore added for *some* purpose, and intended to have *some* effect; and it is our duty in construing the statute and interpreting this clause, to ascertain the purpose and intention of the legislature. It will be noticed that this clause occurs in a provision which is affirmative in form, purporting to give to a widow, though residing out of the State, a right to dower in lands lying within the State. But it is quite clear that this clause could add nothing to the affirmative effect of this provision or of any other provision of the statute upon this subject. The first section of the chapter (66 of *Rev. Stat. of* 1846,) had already given the right to dower, not only in the lands of which the husband died seized, but "of all the lands whereof her husband was seized of an estate of inheritance at any time during the marriage, unless

she is lawfully barred thereof,"—or, substantially, dower at common law. The first part of this section fifteen, as it stood in the revision of 1838, and as it still stands in section 21 in the revision of 1846, where the clause under consideration is inserted, had already removed the disability of alienage; so that no affirmative provision was necessary to *give* dower in the lands of which the husband of a non-resident woman died seized. The restrictive clause, therefore, inserted in the section in 1846, can have no affirmative effect whatever. The only possible effect which it can have is by the negative implication which results from it. Why should the provision of which it forms a part be confined to cases where the husband died seized, if the intention was that the widow should have the same right, whether he died seized or not? The negative implication is, we think, a necessary one, and therefore as much a part of the statute as if it had been expressed. The effect of the provision, as it now stands, is the same as if it had been expressly declared that a woman residing out of the State shall not be entitled to dower in any lands in this State of which her husband did not die seized; thus, in effect, operating as an exception to the general words of the first section of the chapter, unless the legislature can be considered as having treated such non-residence as one mode of *barring dower*, which may have been the view taken by the legislature; the provision in question following immediately after the provision that the woman should "not be barred of her dower" on account of her alienage, which is found at the beginning of the section.

It has, however, been strenuously urged by the counsel for the plaintiff in error, that the whole provision in section twenty-one, as it now stands, with the restrictive words inserted, was intended to apply only to the mode provided in the eighth, ninth, and tenth sections for having dower assigned in the Probate Court. There may have been good reason for making a distinction between residents and non-residents as to this remedy. But no such distinction is intimated in the

sections providing this remedy, and, unfortunately for the argument, the words of section twenty-one clearly extend the effect of the restrictive clause, and of the whole provision, beyond the remedy in the Probate Court. The words immediately succeeding the restrictive clause are, "and the same may be assigned to her, *or recovered*," &c.; so that the negative implication is just as strong against the right of recovery by action, as against the proceeding for assignment in the Probate Court.

But it still remains to be considered, whether it is the nonresidence of the woman at the time of the alienation by the husband, or at the time of his death, which is to deprive her of dower. If the former, the plaintiff will be entitled to recover; if the latter, she will not.

Several states have by statute confined the widow's right to dower, in all cases, to the lands of which her husband died seized. But nothing of this kind has been attempted by this chapter or any other statute in this State. And it is difficult to conceive any sound reason for denying the right to a woman on the sole ground that she happens to be residing in another state when her husband happens to die, and when she was residing with him in this State at the time he conveyed the land, and would have been entitled to her dower by remaining here.

Upon principle, and as a matter of public policy, there would seem to be much better reason for making the right depend upon residence at the time of the conveyance by the husband, than upon her residence at the time of his death. And there are some provisions, as well as certain omissions and changes in the revision of 1846, when compared with that of 1838, which would seem to indicate that such might have been the intention.

The revision of 1838, in the chapter regulating dower (Chapter 2, Title 1, Part 2), section seven, provides a mode by which " a married woman residing *within* this State, may bar her dower," by joining in a deed with her husband, acknow-

ledged as in that section provided. The next section (8,) provides that, " when any married woman not residing in this State shall join with her husband in the conveyance of real estate situated within this State, the conveyance shall have the same effect as if she were sole; and the acknowledgment or proof of the execution of such conveyance by her may be the same as if she were sole." The next section provides for barring dower by jointure. Now, as it is admitted that, under this revision (of 1838,) a widow would have been entitled to dower without reference to her residence, and, whether the land had been aliened by the husband, or not; and this (8th) section occurs under the head of dower, and in the midst of provisions for barring dower, and there was no other provision ·enabling her to release or bar. her dower by deed, it is but reasonable to infer that one of the purposes of the section was to provide a mode by which this might be done. But it is for the reasons here stated, rather than the actual appropriateness of the language, that the section admits of this construction. The language is more appropriate to the conveyance, by the wife, of her own lands.

But, under a system in which a married woman residing out of the State at the time of the conveyance by the husband, was not to be allowed dower in the lands thus conveyed, there would be no need of providing a mode for releasing her dower by joining the husband in a conveyance.

By the revision of 1846, (Section 13, Chap. 66,) under the head of dower, we have substantially the same provision, enabling "a married woman residing *within* this State" to bar her dower by deed, as that in section seven, above alluded to, in the revision of 1838. But the next section (8) of the revision of 1838 is wanting in chapter 66 of the revision of 1846, and no equivalent provision is found in this chapter, providing for dower. But on turning to the previous chapter (65,) of the latter revision, entitled " of alienation by deed," &c., we find section thirteen in the very words of section eight of the revision of 1838, above cited. But in this chapter

it does not stand connected with the subject of dower. And by comparing the previous section (12, Chap. 65,) with section thirteen of the next chapter, 66, (revision of 1846,) an inference may be drawn that section thirteen of chapter sixty-five was intended to apply only to conveyances by the wife of her own property.

While, therefore, the changes made in the revision of 1846, from the previous statutes, go to confirm the conclusion, that non-residence of the wife was intended to deprive her of dower in land aliened by the husband, they would also seem to indicate that the non-residence which should have that effect was to be that existing at the time of alienation. If, therefore, the language of section twenty-one (Chap. 66, revision of 1846,) were such as to permit this construction, we should feel bound to adopt it, as being more reasonable in itself, as well as more consistent with other provisions of the statute. But the express language of the section is so clear as to set any such construction at defiance. "Any woman residing out of the State shall be entitled to dower of the lands of her deceased husband, lying in this State, of which her husband died seized; and the same may be assigned to her, or recovered by her, in like manner as if she and her deceased husband had been residents within the State at the time of his death." Here the time of the non-residence is clearly fixed at the death of the husband.

The consequence is, that a woman residing in this State with her husband at the time he alone conveys the land, loses all right of dower in such land, by removing out of the State and residing there at the time of his death. And it may be,— though we give no opinion upon the point—that a woman, though residing out of the State with her husband at the time he alone conveys the land, and therefore barred of her dower if she remain there till his death, may yet become entitled to dower in the same land, by removing to this State prior to, and residing here at the death of her husband.

If at liberty to go outside of the statute and speculate upon

the probable intention of the legislature, we should be inclined to doubt that such could have been their intention. But we are bound by the intention they have unequivocally expressed. Their power (if exercised before the right of dower has become vested by the death of the husband,) to limit dower, in all cases, to land of which the husband shall die seized, is not denied; and no valid objection can, therefore, be made to any line of distinction, however whimsical, between the cases in which dower in such aliened land shall be allowed, or not. If they have made a mistake and expressed one intention, while they supposed they were expressing another, it is a mistake which they alone are competent to correct.

The judgment of the Circuit Court must be affirmed, with costs to the defendant in error.

COOLEY and CAMPBELL, JJ. concurred.

MARTIN, Ch. J. dissenting. I cannot concur with my brethren in the result in this case. I think Mrs. Pratt entitled to her dower.