THORNBURN *v.* DOSCHER and another.

*(Circuit Court, D. Oregon,* November 21, 1887.)

1. EJECTMENT—PLEADING—OWNERSHIP.
    In an action to recover the possession of real property, the defense of ownership by the defendant or another must be specially pleaded.
2. DOWER—WHO ENTITLED TO—RESIDENCE.
    A woman who is not a resident of the state is not entitled to dower in any lands therein of which her husband did not die seized.
3. SAME—ESTIMATION OF VALUE.
    In estimating the value of a widow's dower in land aliened by the husband in his life-time, she ought to have the benefit of the increase in value between the date of such alienation and the death of the husband, not arising from improvements made or placed thereon.

*(Syllabus by the Court.)*

Action to Recover Possession of Real Property.
*John W. Whalley* and *James K. Kelly*, for plaintiff.
*Seneca Smith*, for defendants.

DEADY, J.    This action is brought by the plaintiff, a citizen of Arkansas, against the defendants, citizens of Oregon, to recover dower in a tract of land included in the William Blackistone donation, lying on the west bank of the Wallamet river, just north of Portland, and valued at $50,000.

It is alleged in the complaint that on December 24, 1865, and prior thereto, Thomas Thornburn was seized of an estate of inheritance in the premises, and that at and during such time the plaintiff was the lawful wife of said Thornburn, and so lived with him until his death, at Prescott, Arkansas, on October 20, 1886; that the plaintiff's right to dower in said premises has not been aliened, and that she is entitled to the undivided

one-third thereof during her natural life, the present value of which is $16,000.

The answer of the defendant, besides sundry denials, contains four defenses, called therein "further and separate answers."

The plaintiff demurs to the first, third, and fourth of these defenses, because the facts stated therein do not constitute a defense, and moves to make the second one more definite and certain.

The first defense consists of an allegation that the defendant Anna Doscher is the owner in fee-simple of the premises, and that her co-defendant is her husband. At common law this defense could have been given in evidence under the general issue of "not guilty." But the Code of Civil Procedure, § 316, provides that "in an action to recover the possession of real property, the defendant shall not be allowed to give in evidence any estate in himself or another in the property * * * unless the same be pleaded in his answer." That Anna Doscher has an estate in fee in the premises is a defense to this action, and the demurrer thereto is not well taken.

The second defense is that Thomas Thornburn purchased the premises at a sale on an execution against the property of William Blackistone and John C. Doscher, and received from the sheriff a deed therefor, in trust for the use and benefit of Anna Doscher, and thereafter, in pursuance of said trust, conveyed his interest in the premises "through" Joseph N. Dolph, to said John C. Doscher. Without stopping to consider the legality of this defense, it is enough to say that the facts and circumstances constituting it are stated sufficiently definite and certain.

The third defense is that on December 24, 1865, Thomas Thornburn conveyed his interest in the donation of William Blackistone to Joseph N. Dolph, and never thereafter owned or was seized of any part thereof; and that the plaintiff has never been a resident of this state.

The fourth defense is that at the time of the sale to Dolph, as in the third defense mentioned, the premises were not worth over $200.

By the law of this state, since May 1, 1854, a widow is entitled to dower in "all the lands whereof her husband was seized of an estate of inheritance at any time during marriage." 2 Or. Laws, § 2954. But if the husband aliens such lands, and they "shall have been *enhanced* in value after the alienation," the same "shall be estimated in setting forth the widow's dower according to their value at the time they were so aliened." Id. § 2960. "Any woman residing out of the state shall be entitled to dower of the lands of her deceased husband lying in this state, of which her husband died seized, and the same may be assigned to her or recovered by her, as if she and her deceased husband had been residents within the state at the time of his death." Id. § 2974.

The third defense is based on section 2974. The object of this section is not to give a non-resident widow the right to dower. That was already done by section 2954, which gives the right generally, and without qualification as to alienation by the husband or the residence of the parties. Although the provision is affirmative in form, it has a negative operation. Therefore it must be construed as if it read: "No wo-

man residing out of the state shall be entitled to dower of the lands of her husband lying in this state, of which he did not die seized."

By a necessary implication the section denies to a non-resident woman the right to dower of lands of which her husband was not seized at the time of his death.

Cases may arise in which the time when the woman was non-resident, with reference to the act of alienation by her husband, or even his death, may be material in the construction of this statute. But in this case it appears that the woman never was a resident of the state, and therefore no such question can arise.

It rests with the legislature to say what interest, if any, married persons shall have in the property of each other, as an incident of the relation between them. It may give or withhold dower altogether. Or it may for the security of titles, and the protection of innocent purchasers, provide that a non-resident woman whose very existence is probably unknown within the state, and is practically disavowed by the husband, shall not be entitled to dower of lands which he has disposed of without her concurrence or consent, and ostensibly as a single man.

This very case appears to be a good illustration of the wisdom of the provision. Thornburn was probably a transient person. His wife was unknown; and probably the fact that he had one was never even suggested. To subject persons buying property of him under such circumstances to a claim of dower in after years, might well be thought inexpedient, if not unjust, and, therefore the legislature has denied it.

In *Bennett* v. *Harms*, 51 Wis. 251, 8 N. W. Rep. 222; *Pratt* v. *Tefft*, 14 Mich. 191; and *Ligare* v. *Semple*, 32 Mich. 438, this question arose under a similar statute, and it was held that the widow was not entitled to dower.

The fourth defense is made under section 2960. To begin with, it may be admitted that the word "enhanced," taken in an unqualified sense, is equivalent to "increased," and comprehends any increase of value, however caused or arising. But under the circumstances it ought to be construed to include only the value caused by the improvements put upon the land by the tenant or those under whom he claims, and not that which arises fortuitously, or from what may be called natural causes.

I know that at common law the value at the time of alienation was the basis on which the value of dower was estimated. 4 Kent, 65. But it was always an unjust rule, and founded on special reasons that have no force at this time, or in this country, where it has been ably criticised and questioned.

A. buys a piece of wild land, such as this was in 1865, of a known married man, and omits to obtain the wife's relinquishment of dower. When the husband dies, and the widow's right of dower becomes a vested interest in one-third of the land for her natural life, the same has increased in value many times, without either the labor or capital of the purchaser. On what consideration of public policy or natural justice should she be deprived of her share of this increase in value for the ben-

efit of one who gave nothing for it, and deliberately took the chances on her husband surviving her? None has been suggested, nor can there be any. Sitting in this court, if the case was to turn on the decision of this question, I might not feel justified on the authorities in sustaining the demurrer to this defense. But if I were sitting in the supreme court of the state, I would do so without hesitation.

To provide that a woman shall have, at the death of her husband, dower in all the lands of which he was seized of an estate of inheritance during the marriage, and then declare that, in case the husband aliened the same during his life, she shall not have the benefit of the intermediate rise in value of the property, is a legal "juggle," that may fitly be characterized as keeping the word of promise to the ear, and breaking it to the hope.

Since writing the above, I have been fortunate enough to come across *Powell* v. *Manufacturing Co.*, 3 Mason, 347, in which Mr. Justice STORY, with his usual research and wealth of learning, holds that at common law a woman was dowable of the lands aliened by her husband during marriage, according to their value at the time of the assignment, less the value of improvements placed thereon by the purchaser, or directly consequent on such improvements; citing with marked approbation the same doctrine, as announced by Mr. Chief Justice TILGHMAN, in *Thompson* v. *Morrow.* 5 Serg. & R. 289. In conclusion he says:

"This doctrine appears to me to stand upon solid principles, and the general analogies of the law. If the land has, in the intermediate period, risen in value, she receives the benefit; if it has depreciated, she sustains the loss. Her title is consummate by her husband's death, and, in the language of Lord COKE, that 'title is to the quantity of land, viz., one just third part.'"

The motion is denied, and the demurrer is overruled.