TRI-STATE MILLING CO. *v.* BREISCH.

1. SALES—CONTRACT—CORRESPONDENCE—CONSTRUCTION.

In an action for damages for failure to deliver flour in accordance with a contract of sale, correspondence consisting of letters and telegrams between the parties examined, and *held,* that a letter by the sellers in which they state that they are "clear on everything contained in" a letter of the buyer except a specification concerning certain sacks, was an acceptance of the terms of payment contained in the letter of the buyer referred to, and closed the contract.

2. SAME—WAIVER OF BREACH.

It being the duty of the buyer to furnish sacks for the flour, a shipment of sacks was refused by the sellers because the transportation charges were not paid thereon, whereupon the buyer notified the sellers that the carrier had been instructed to turn the sacks over to them free of charges. Later the sellers proposed to take the sacks and ship the flour on certain terms as to payment. *Held,* that the proposal constituted a waiver of the seller's right to a tender of the sacks free of charges.

3. EVIDENCE — ADMISSIBILITY — DAMAGES — FAILURE TO DELIVER FLOUR—MARKET PRICE.

In an action for failure to deliver flour at Lansing, a miller having testified that the price of wheat governs the price of flour, and that the price of wheat in Detroit governs the price in Lansing, issues of a daily newspaper published in Detroit and showing the market quotations on wheat are admissible.

Error to Ingham; Wiest, J. Submitted April 10, 1906. (Docket No. 36.) Decided July 23, 1906.

Assumpsit by the Tri-State Milling Company against Christian Breisch and Robert W. Langenbacher, copartners as Christian Breisch & Company, for breach of a contract for the sale of flour. There was judgment for plaintiff, and defendants bring error. Affirmed.

Plaintiff sued defendants to recover damages for breach

of contract for the sale of four carloads (800 barrels) of flour. Defendants' liability depends entirely upon correspondence by letter and telegram, which passed between the parties; plaintiff residing in Nashville, Tenn., and the defendants, manufacturers of flour, residing in Lansing, Mich. The correspondence, as far as material, is as follows:

"NASHVILLE, TENN., Sept. 16, '03.
"C. BREISCH & CO.,
"Lansing, Mich.
"*Dear Sirs:* If you will mail us samples promptly of your best patent 95 per cent. patent and extra fancy we can probably do some business with you. Quote in bulk f. o. b. your track per 196 lb. we furnishing cotton or jute sacks.

"We pay net cash for all our purchases and refer you to the Fourth National or Merchants Banks of this city, to whom we would like for you to write concerning us.
"Yours truly,
"J. S. TRI-STATE MILLING CO."

"Sept. 18, 1903.
"TRI-STATE MILLING CO.,
"Nashville, Tenn.
"*Gentlemen:* We are in receipt of your favor of the 16th and under special cover we have mailed you a sample of our strictly straight or in other words a 95 per cent. patent. However this is a straight run with 5 per cent. low grade, out, and based on today's market, we can offer same at $3.30 per bbl., f. o. b. Lansing, bulk. Trusting to hear favorably from you, we remain,
"Yours truly,
"CHRISTIAN BREISCH & CO."

September 21, 1903, plaintiff replied by the following telegram:

"Offer three twenty bulk Lansing two cars like sample."

"LANSING, MICH., Sept. 21, 1903.
"TRI-STATE MILLING CO.,
"Nashville, Tenn.
"*Gentlemen:* Accept offer three twenty bulk two cars.
"CHRISTIAN BREISCH & CO."

"Sept. 21, 1903.

"TRI-STATE MILLING CO.,
        "Nashville, Tenn.

"*Gentlemen:* Without repeating wires exchanged between us, we have booked you two cars of our straight, equal sample mailed you at $3.20 per bbl., bulk, f. o. b. Lansing, and now await your sacks.

"The market has declined a cent since we quoted you a price at $3.30, but in order to start business with you, we have decided to accept your offer of $3.20, on usual terms, bill of lading attached to sight draft, which we trust will be satisfactory.

                "Yours truly,
                        "CHRISTIAN BREISCH & CO."

                "NASHVILLE, TENN., 9, 22, 1903.

"Messrs. CHRISTIAN BREISCH,
        "Lansing, Mich.:

"Please ship us at once the following flour:  *  *  * Routing per L. & N. Ry. at Cincinnati, Ohio. Time of shipment. Please rush, rush, rush. We are expressing you the cotton sacks for above. All charges will be prepaid. Instruct all drafts through Fourth National Bank of Nashville, and they will be promptly paid on arrival of goods. Make separate drafts and bills of lading for each car. Observe routing instructions carefully, as some expense bills are more valuable to us than others for reshipping.

                "Respectfully,
                        "TRI-STATE MILLING CO."

                "NASHVILLE, TENN., 24, 1903.

"C. BREISCH,
        "No. Lansing.

"Market closed much lower. Offer three fifteen, same conditions, three cars. Oct. shipment. Quick wire.
                        "TRI-STATE MILLING CO."

                        "LANSING, MICH., 24, 1903.

"TRI-STATE MILLING CO.,
        "Nashville, Tenn.:

"Three twenty two cars best can do Oct. shipment.
                        "CHRISTIAN BREISCH & CO."

                "NASHVILLE, TENN., Sept. 25.

"CHRISTIAN BREISCH & CO.,
        "Lansing, Mich.:

"Book the two cars.
                        "TRI-STATE.  12:30 p. m."

"Sept. 24, 1903.

"TRI-STATE MILLING CO.,
           "Nashville, Tenn.

"*Gentlemen:* We are in receipt of your shipping instructions of the 22d. We are entirely clear on everything of your order of 324 with the exception of the 100 19 lb. sacks. Is this correct? Do you want flour packed in 19 lb. sacks? We note this order as you have it figured out will make 199 bbls. 146 lbs. We have no tube for packing twelve pound sacks and if we had known that you were going to give us a mixed car we would not have accepted the order at the price we sold you. We supposed from the correspondence that it would be in jute and cotton halves. However, we will fill your order as soon as the sacks arrive, but we wish you would state whether you want the eights and 12-lb. sacks tied or sewed. We can hardly afford to tie the small sacks, but will tie the larger ones. Kindly inform us on this point, and oblige,

                    "Yours truly,
                         "CHRISTIAN BREISCH & CO."

                "NASHVILLE, TENN., Sept. 26, 1903.
"CHRISTIAN BREISCH & CO.,
              "Lansing, Mich.

"Sew all the sacks. Trade here will not have tied sacks.

                    "TRI-STATE MILLING CO."

                "NASHVILLE, TENN., Sept. 26, 1903.
"C. BREISCH & CO.,
            "Lansing, Mich.

"*Gentlemen:* We have yours of the 24th inst. and have wired you not to tie any of the sacks shipped us. Our customers will reject the flour if the sacks are tied, and we will simply have to do all of this work over again when the cars reach Nashville. Will not send you any more sacks smaller than 24 lb. This was a special order, and we did not want to bring the car into our sidetrack. Give us quick shipment, and oblige,

                    "Yours truly,
                         "TRI-STATE MILLING CO."

            "NORTH LANSING, MICH., Sept. 28, 1903.
"TRI-STATE MILLING CO.,
              "Nashville, Tenn.

"*Gentlemen:* We are in receipt of your favor of the 25th, also shipping instructions for the two cars of flour

sold you same date. We accepted this order on condition that it would be shipped some time during Oct. It will be impossible for us to get these two cars out as you have ordered them. You will have to allow us to ship these two cars when it is convenient for us during October or cancel same on receipt of this letter. The sacks that you claim that you expressed us on the 22d have not yet arrived, and we have other orders that must go forward during the month, as our capacity is only 150 bbl. a day, and we have a customer who is using the year around from 50 to 80 bbl. of flour each day. You will see that we are well sold at all times. We should have had one of your cars go forward today or Tuesday if the sacks had arrived. You had better send tracer for them and get them here promptly. You would better advise us what to do in regard to the two cars for Oct. shipment. It will be impossible to send them as ordered.

"Yours truly,
"CHRISTIAN BREISCH & CO."

"NORTH LANSING, MICHIGAN, Sept. 28, '03.
"TRI-STATE MILLING CO.,
"Nashville, Tenn.

"*Gentlemen:* We have your favor and noted. The express company delivered to us, today, two bales of sacks, but asked us to pay charges of $17.93. We refused to accept the sacks and advance the charges. We sold you the flour f. o. b. Lansing, and you were to furnish sacks free of charge to us. Therefore you had better turn the sacks over to some of the other mills in the city that have orders from you as we do not care to accept the sacks and sew the 16ths, nor do we care to ship our flour to the South, payable on arrival, therefore, we hereby cancel the orders for the four cars.

"Yours very truly,
"CHRISTIAN BREISCH & CO."

"NASHVILLE, TENN., Sept. 30, 1903.
"C. BREISCH & CO.,
"Lansing, Mich.

"*Dear Sir:* Replying to yours of the 28th inst., beg to say that it will be satisfactory for you to ship us the last two cars at any time during October. Please get them out as soon as possible, however, and you will very greatly oblige.

"Yours truly,
"TRI-STATE MILLING CO."

"NASHVILLE, TENN., Sept. 30, 1903.
"Messrs. C. BREISCH & CO.,
                    "Lansing, Mich.

"*Gentlemen:* We have yours of the 28th inst., and replying, beg to say that we prepaid expressage on the sacks sent you, amounting to $14.14.  We hold their receipt for this amount, and have requested them to telegraph the agent at Lansing, to deliver you the sacks immediately without collecting anything.

"Regarding the 12 lb. sacks, beg to say that you did not specify any minimum size when you sold this flour. We made a fair and square trade with you, and shall insist upon getting every pound which we bought.  The 16th's are somewhat troublesome to pack, hence will allow you 5 cents per barrel extra on this size.  Since we bought from you soft wheat markets have advanced 10 cents or 15 cents per bushel.  If you wish to pay us 10 cents and the express charges by us on the sacks, we will permit you to cancel the order, but otherwise we cannot do so.

"If you had any objections to make, you should have specified them before we traded.  You can send your drafts through Fourth National or Merchants National Bank of this city, and we will honor them promptly on arrival of each car.  If you wish us to give you references, we will furnish any number in your own State as well as other States.  Let us hear from you fully by return mail, and oblige.

                    "Yours truly,
                        "TRI-STATE MILLING CO."

                    "LANSING, MICH. Oct. 1, 1903.
"TRI-STATE MILLING CO.,
                    "Nashville, Tenn. :

"Will accept sacks and ship flour as fast as possible terms sight draft with bill of lading wire if you accept these terms.

                    "CHRISTIAN BREISCH & CO."

                    "NASHVILLE, TENN. Oct. 2.
"CHRISTIAN BREISCH & CO.,
                    "Lansing, Mich. :

"We want flour on terms bought see letter of today.
                        "TRI-STATE MILLING CO."

Other correspondence followed in which each party presented their views as to their rights.  The court instructed

the jury that a valid contract was made by which the defendants agreed to sell the flour to the plaintiff, that defendants had committed a breach thereof, and left to the jury only the question of damages.

*Thomas, Cummins & Nichols*, for appellants.

*Black & Reasoner*, for appellee.

GRANT, J. (*after stating the facts*). 1. It is insisted by the plaintiff that a valid and binding contract was made, while defendants contend that none was made, because no terms of payment were assented to. Plaintiff gave evidence showing that when flour is sold by sample the usual terms are sight draft with bill of lading attached, to be paid when goods arrived, and are found equal to the sample. Defendants admitted that they had heard of such custom, but that they had never done business that way. The court, however, eliminated the question of custom from the case. The secret understanding of parties to a contract cannot control its terms. Is it clear from the correspondence that the minds of the parties met on the essential features of a contract for the sale and delivery of the flour ? The offer in defendants' letter of September 18th to sell at " $3.30 per barrel f. o. b. Lansing;" the telegram of plaintiff on the 21st, offering "three twenty bulk Lansing two cars like sample," and the defendants' reply telegram " Accept offer three twenty bulk two cars," were evidently understood by the parties as making a contract. Defendants on the same day wrote plaintiff that they had accepted the offer " on usual terms, bill of lading attached to the sight draft." In the absence of any custom or agreement, the offer contained in the letter of September 18th would mean cash on delivery on board cars at Lansing. On the 22d, before plaintiff had received the letter of the 21st, it wrote defendants, stating that it had expressed the sacks to be used for shipment, that all charges would be prepaid, and wrote " Instruct all drafts through the Fourth National Bank

of Nashville, and they will be paid promptly on arrival of goods." To this defendants replied on the 24th, saying that they were clear on everything contained in that letter with the exception of the 100 19-lb. sacks. That letter is a clear acceptance as to the terms of payment, and closed the contract. Meanwhile, a second order for another carload had been made by the plaintiff and accepted by the defendants on the same terms as the former order. On the 28th defendants again wrote plaintiff, asking for further time on the last two cars, in which they refer to the flour as sold on the date of the 25th, and stating further that the sacks had not arrived. On the same day, but evidently after the letter above referred to was written, the sacks came and were delivered to defendants with charges thereon of $17.93. They refused to accept the sacks and advance the charges, and wrote plaintiff that it had better turn the sacks over to other parties as they did not care to accept the sacks, and sew the 16ths, or to ship their flour payable on arrival, and canceled the order for four cars. It was the duty of the plaintiff to furnish the sacks. It had done so, but through no fault on its part the express company presented a bill to defendants for the amount of the expressage, which the plaintiff had paid. Defendants were under no obligation to pay. Plaintiff promptly did all in its power to correct the mistake by requesting the express company at Nashville to telegraph the agent at Lansing to deliver the sacks immediately without charge. Whether this was done we can only infer. On the following day defendants telegraphed plaintiff:

" Will accept sacks and ship flour as fast as possible; terms sight draft with bill of lading. Wire if you accept these terms."

It seems evident from this that there would have been no difficulty in delivering the sacks if defendants had chosen to keep their contract.

2. Counsel for defendants urge that there was no proof of delivery or tender of the sacks to the defendants by the

plaintiff free of charge; and notwithstanding the cancellation of the contract by the letter of September 28th, it was still the duty of the plaintiff, if it insisted upon the performance of the contract, to tender the sacks. The objection made by the defendants on September 30th to the delivery of the sacks was withdrawn the very next day when they wired plaintiff:

"Will accept sacks and ship flour as fast as possible; terms sight draft with bill of lading. Wire if you accept these terms."

This clearly indicated that defendants were satisfied with the tender of the sacks (perhaps the express company had in conformity with plaintiff's request withdrawn its demand that defendants pay the shipping charges). From this time there was no other obligation upon plaintiff respecting these sacks than to leave them where they were in the express office at Lansing, so that defendants could use them if they chose to perform their contract. As there was no evidence that these sacks were moved, it is to be presumed that this obligation was performed.

3. It is. conceded that the court below correctly instructed the jury that the difference between the contract price and the market price of the goods at the time and place of delivery was the measuré of damages. It is, however, claimed that there was no evidence of market price of flour at Lansing. There was evidence tending to show that Detroit was the nearest controlling market. Mr. Thoman, a miller in Lansing, testified that the Detroit markets controlled the Lansing wheat market, and that the price of wheat indirectly controlled the price of flour. The quotations of the market price of flour in the city of Detroit, as reported in the Detroit Free Press, a daily newspaper published in that city, were introduced in evidence. This testimony was admissible. *Sisson* v. *Railroad Co.*, 14 Mich. 489; *Aulls* v. *Young*, 98 Mich. 234. Plaintiff also gave testimony showing that the average price of the grade of flour contracted for in Michigan at the time was not under $3.45 per barrel.

We cannot agree with counsel that there was no evidence in the case upon which the jury might find the market value of flour in the city of Lansing.

The judgment is affirmed.

CARPENTER, C. J., and MCALVAY, BLAIR, and MOORE, JJ., concurred.