Argued December 7, 1921, affirmed January 17, 1922.

## RIEGER *v.* HARRINGTON.

(203 Pac. 576.)

**Curtesy—Burden on Husband to Show Rights.**

1. The burden is on the husband to show the existence of facts entitling him to the curtesy.

**Curtesy—Descent and Distribution—Dower—Legislature may Declare Rules of Descent and Fix Estates of Husband and Wife.**

2. The state has the right to regulate the tenure of real property within its limits, the modes of its acquisition and transfer, the rules of its descent, and to declare the dower or curtesy interest of wife or husband, if any, in the real property of the other within the state.

**Curtesy—Nonresident Husband has no Rights in Lands Disposed of by Wife.**

3. Under Sections 10073, 10082, Or. L., a nonresident is barred from the curtesy in lands of which his wife was not seized at her death, and which she conveyed prior thereto.

**Statutes—Presumed Amendment Intends Change of Meaning in Particulars Wherein There is Material Change in Language.**

4. By amending a statute the legislature demonstrates the intent to change the pre-existing law, and the presumption must be that it is intended to change the meaning of the statute in all the particulars wherein there is a material change in the language of the amended act.

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.

The record in this case discloses that on March 1, 1898, C. R. Rieger, plaintiff herein, was a married man, residing in Multnomah County, Oregon; that he was the owner in fee simple of the south half of lot

Numbered 7 in Block Numbered 17, in East Portland, now within the corporate limits of the City of Portland, and that on that date he executed and delivered to his wife a warranty deed, conveying to her the fee-simple title to the following described property:

"All of the South One-half of Lot Numbered 7 in Block Numbered 117, East Portland, now a part of the City of Portland, in above county and state, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and also all my estate, right, title and interest in and to same, including dower and claims of dower. To have and to hold the above described and granted premises unto the said Mrs. E. C. Rieger, her heirs and assigns forever.

"And C. R. Rieger, grantor above named, does covenant to and with Mrs. E. C. Rieger, the above named grantee, her heirs and assigns, that he is lawfully seized in fee simple of the above granted premises; that the above granted premises are free from all encumbrances except a certain mortgage for $1,200 * * , and that he will, and his heirs, executors and administrators shall, warrant and forever defend the above granted premises, and every part thereof, against the lawful claims and demands of all persons whomsoever."

This deed was received for record on June 8, 1898.

The plaintiff has not been a resident or inhabitant of the State of Oregon since his departure therefrom in the year 1908.

On June 14, 1909, Mrs. E. C. Rieger, by her attorney in fact, executed and delivered to Anita L. Harrington, defendant herein, a warranty deed reciting:

"That E. C. Rieger, of the State of Oregon, in consideration of $2,500 to her paid by Anita L. Harrington, of Portland, State of Oregon, has bargained and sold, and by these presents does grant, bargain, sell and convey, unto the said Anita L. Harrington,

her heirs and assigns, * * all of the South One-half
of Lot Numbered 7 in Block Numbered 117 in East
Portland, now within the corporate limits of the City
of Portland, together with all and singular the tene-
ments, hereditaments and appurtenances hereunto
belonging, or in anywise appertaining, and also all
her estate, right, title and interest in and to the same
* * . To have and to hold the above described and
granted premises unto the said Anita L. Harrington,
her heirs and assigns forever. And * * grantor
above named does covenant to and with Anita L.
Harrington, the * * grantee, her heirs and assigns,
that the above granted premises are free from all
encumbrances, and that she will, and her heirs, exec-
utors and administrators shall, warrant and defend
the above granted premises, and every part and
parcel thereof, against the lawful claims and demands
of all persons whomsoever.''

Mrs. Rieger, grantor in the last-named deed, died
on December 20, 1918. Her widower, plaintiff herein,
instituted this suit against Anita L. Harrington for
the purpose of having admeasured his alleged curtesy
right of an estate for his natural life, in one half
of the real property conveyed to the defendant, Mrs.
Anita L. Harrington, praying that the property be
partitioned or sold, also for an accounting with the
defendant for the rents and profits retained by her
since the time of the vesting of appellant's alleged
curtesy right.

As a conclusion of law, and based upon the facts,
the court found that plaintiff was not entitled to an
estate of curtesy in the real property above described,
by reason of the fact that he was a nonresident of
the State of Oregon at the time of the death of his
wife, and ordered, adjudged and decreed ''that the
plaintiff has no right, title, interest or estate in the
above described lands.''

Plaintiff alleges error on the face of the record, in this:

"That the court erred:

"In decreeing that plaintiff has no right, title, interest or estate in the real property described in the decree and complaint.

"In entering a decree that defendant was the owner of such real property, free and clear of any claim or right of the plaintiff.

"In not making and entering a decree adjudging and decreeing that the plaintiff was the owner by curtesy of an estate for his natural life, of one-half of said real property, and in not making and entering a decree admeasuring said curtesy right and partitioning said property or ordering sale of same, as prayed for in plaintiff's complaint."

AFFIRMED.

For appellant there was a brief and oral argument by *Mr. Frank Schlegel.*

For respondent there was a brief and oral argument by *Mr. Frank S. Senn.*

BROWN, J.—The question presented is whether plaintiff, a nonresident of the State of Oregon, is entitled to an estate by the curtesy in the lands of his deceased wife of which she was not seized at the time of her death but had conveyed some years prior thereto.

1. In an action to establish the right of tenancy by the curtesy, the burden is on the husband to show the existence of the facts entitling him to the curtesy: 17 C. J., § 61, p. 436.

"The origin of the estate by the curtesy, although very ancient, is involved in obscurity; nor is there any principle to which by consent it is referable. * * It is quite important to know the reasons which

prompted the introduction of tenancy by the curtesy into the common law in order to determine the intent of subsequent legislation in continuing, modifying or destroying it; but unfortunately, there is no consensus of judicial opinion as to the reasons which gave rise to its introduction into the English system. It has been said by an English jurist that it has no moral foundation to support it, and an American court has characterized it as an estate which exists simply because *'ita lex scripta est.'* A noted English writer says the custom sprang from favor to the husband, rather than from any right * * . In the United States curtesy was introduced as a part of the common law, but it has been abolished, or modified by statute, in many of the states.'' 17 C. J., § 2, p. 414.

2. The legislature has the right by statute to declare what interest a husband, during the life and after the death of his wife, shall have in her real estate situate within the State of Oregon. This state is empowered to regulate the tenure of real property within its limits, the modes of its acquisition and transfer, the rules of its descent, and to declare the dower or curtesy interest, if any, of a wife or husband in the real property of the other: *United States* v. *Fox,* 94 U. S. 315 (24 L. Ed. 192, see, also, Rose's U. S. Notes); *Cope* v. *Cope,* 137 U. S. 682 (34 L. Ed. 832, 11 Sup. Ct. Rep. 222); *Buffington* v. *Grosvenor,* 46 Kan. 730 (27 Pac. 137, 13 L. R. A. 282); *Conner* v. *Elliott,* 59 U. S. (18 How.) 591 (15 L. Ed. 497); *Bennett* v. *Harms,* 51 Wis. 251 (81 N. W. 222); *Ligare* v. *Semple,* 32 Mich. 438; *Thornburn* v. *Doscher,* 32 Fed. 811 (13 Sawy. 60).

3. Rieger, plaintiff herein, asserts that the lower court based its decision upon the point that he was a nonresident of the State of Oregon at the time of the death of his wife, the court being of the opinion

that the decision in *Thornburn* v. *Doscher*, 32 Fed. 811 (13 Sawy. 60), was a correct construction of Section 10073, Or. L., and that under Section 10082 thereof the rule was made applicable to the right of curtesy. Plaintiff takes issue with this construction.

It follows that the disposition of this case rests upon the interpretation to be given Section 10073, Or. L., reading:

"A woman being an alien shall not on that account be barred of her dower; and any woman residing out of the state shall be entitled to dower of the lands of her deceased husband lying in this state of which her husband died seized, and the same may be assigned to her, or recovered by her, in like manner as if she and her deceased husband had been residents within the state at the time of his death."

And to Section 10082, reading in part:

" * * Estates by the curtesy may be admeasured, assigned and barred in the same manner that dower may be admeasured, assigned and barred; and, as far as practicable, all other laws of this state applicable to dower shall be applicable, in like manner and with like effect, to estates by the curtesy."

In reference to Section 10073, Mr. Justice RAND, speaking for this court in *Woolsey* v. *Draper*, 103 Or. —— (201 Pac. 730, 732), said:

"This section was under consideration by this court in *Cunningham* v. *Friendly*, 70 Or. 222 (139 Pac. 928, 140 Pac. 989), and it was there held that a woman residing out of the state shall be entitled to dower in lands only of which her husband died seized, citing in support thereof *Thornburn* v. *Doscher*, 32 Fed. 811."

In the Cunningham case it was held that under the provisions of the statute as construed by this court, the wife, being a nonresident of the state, had no

right of dower in the lands involved, and, having no interest therein, was not a necessary party to a partition suit.

Section 10073, Or. L., was copied from the Revised Statutes of Michigan of 1846. In fact, the Oregon statute relating to estates in dower was taken from Michigan. The Michigan act relating to dower and curtesy is entitled:

"An act relating to estates in dower, by the curtesy, and general provisions concerning real estate."

Very early in the history of Oregon Territory, dower and curtesy rights were defined by the legislative assembly. The territorial legislature, at its session commencing December 5, 1853, adopted the law entitled:

"An act relating to estates in dower, by the curtesy, and general provisions concerning real estate."

This law became effective May 1, 1854, and has continued in force since that time without material change except that the widow's dower has been increased from one third to one half, and that the estate by the curtesy has been reduced from the whole to one-half part of all the lands of which the wife was seized. This act consists of twenty-nine sections and is almost an exact copy of the Michigan law relating to dower, comprising twenty-nine sections of the Revised Statutes of Michigan, 1846.

Section 10082, Or. L., here under consideration, is Section 21 of the Michigan act and likewise Section 21 of the Oregon Territorial Act. This section of the statute was copied into the laws of other states. The decisions in the several jurisdictions interpreting it are in harmony. It was construed by the Supreme Court of Michigan in *Pratt* v. *Tefft,* 14 Mich. 191,

102 Or.—39

and *Ligare* v. *Semple,* 32 Mich. 438, and in Wisconsin in the case of *Bennett* v. *Harms,* 51 Wis. 251 (8 N. W. 222). These cases were cited by DEADY, J., when he wrote:

"The object of this section is not to give a nonresident widow the right to dower. That was already done by Section 2954 (Sec. 10053, Or. L.), which gives the right generally, and without qualification as to alienation by the husband or the residence of the parties. Although the provision is affirmative in form, it has a negative operation. Therefore, it must be construed as if it read: 'No woman residing out of the state shall be entitled to dower of the lands of her husband lying in this state, of which he did not die seized.' By a necessary implication, the section denies to a nonresident woman the right to dower of lands of which her husband was not seized at the time of his death." *Thornburn* v. *Doscher, supra.*

The early construction given by the Supreme Court of Michigan was affirmed in the case of *Stringer* v. *Dean,* 61 Mich. 203 (27 N. W. 886), and reaffirmed again in *Putney* v. *Vinton,* 145 Mich. 219 (108 N. W. 657, 9 Ann. Cas. 147).

In the case of *Atkins* v. *Atkins,* 18 Neb. 474, 475 (25 N. W. 724), the court, in construing a like statute, said:

"It will be seen that any woman residing out of the state is entitled to dower only in such lands of her deceased husband lying in this state as he was seized of at the time of his death. This section of the statute seems to have been copied from the statute of Michigan on that subject, the language being the same. The proper construction of the section was before the Supreme Court of that state in *Ligare* v. *Semple,* 32 Mich. 438."

The cases of *Pratt* v. *Tefft, Ligare* v. *Semple, Atkins* v. *Atkins,* and *Bennett* v. *Harms,* hereinbefore

referred to, were cited with approval by the Supreme Court of Kansas in *Buffington* v. *Grosvenor, supra.*

In the more recent case of *Burr* v. *Finch,* decided May 13, 1912, 91 Neb. 418 (136 N. W. 72), which involved title under a tax lien, the court wrote:

"While the tax lien was being foreclosed the patentee and his wife were nonresidents, residing at Independence, Iowa. She is not entitled to redeem. Under the statutes of this state the dower of a nonresident is limited to lands of which her husband died seized."

To like effect is *Miner* v. *Morgan,* 83 Neb. 400 (119 N. W. 781).

The Circuit Court of Appeals, in an opinion rendered July 6, 1920, said:

"We may assume that its adoption (Section 10073, Or L.) was inspired by a principle of public policy, having in view the vast distance between the Territory and the Eastern States, whence immigration came, the difficulty of communication, the difficulty of ascertaining whether a resident of the Territory had a wife 'back in the States,' and the difficulty of obtaining her signature in case she were known." *Ferry* v. *Spokane P. & S. Ry. Co.,* 268 Fed. 117.

In that case the court held that under Section 10073 a wife who was a nonresident of the state at the time of the conveyance of lands within the state by her husband, in which she did not join, is not entitled to dower in such lands, and that such statute is not invalid as abridging the privileges or immunities of citizens within the meaning of Const. U. S., Amend. XIV.

The record in this case informs us not only that the plaintiff was a nonresident of the State of Oregon at the time of the conveyance of the property by his

wife to the defendant, but that he continued to be a nonresident until the time of her death.

It is well settled in this state by the adjudicated cases of our own court, as well as by authorities from other jurisdictions herein noted, that a wife, under circumstances similar to those existing in the instant case, would not be entitled to dower in the lands referred to. For the same reason, under the provisions of our Code in force since 1907 the right of the nonresident husband to title by the curtesy does not attach to the lands conveyed by the deed set forth in the statement herein.

The section of our Code denominated Section 10082 was originally Section 30, Title II, of "An act relating to estates in dower, by the curtesy, and general provisions concerning real estate," enacted, as we have seen, by the legislative assembly of the Territory of Oregon meeting December 7, 1853. That title contained the one section only. It then read:

"When any man and his wife shall be seized in her right of any estate of inheritance in lands, the husband shall, on the death of his wife, hold the lands for his life, as tenant thereof by the curtesy, although such husband and wife may not have had issue born alive." Statutes of Oregon, 1853, p. 377.

It was amended by Chapter 87, Laws of Oregon, 1907, to read:

"The widower of every deceased person shall be entitled, as tenant by the curtesy, to the use, during his natural life, of one half part of all the lands whereof his wife was seized of an estate of inheritance at any time during the marriage, although such husband and wife may not have had issue born alive, unless he is lawfully barred thereof. Estates by the curtesy may be admeasured, assigned, and barred in the same manner that dower may be admeasured, as-

signed and barred; and, as far as practicable, all
other laws of this state applicable to dower shall be
applicable, in like manner and with like effect, to
estates by the curtesy.''

If the language of the amended section were obscure
or its meaning ambiguous, we would here record the
history of the statute, which would reveal that it was
enacted as the result of agitation for equal political
and property rights between man and woman. But the
language is so plain, its meaning so evident, that re-
course may not be had to matters outside of the record
for the purpose of determining its express meaning.
It is our duty, when construing the amended section,
to learn the intention of the legislative mind. In
this amendment the legislative intent appears in
terms clear and manifest. The language conveys
to our minds the legislative will, and is, therefore,
binding upon us. The effect of this statute being
obvious, we are not at liberty to go outside of its
provisions and speculate that the legislature might
have meant something else. We must not presume
that the law relating to the widower's curtesy was
not amended for some definite purpose, nor that it
was not intended to be effective as amended.

4. By amending that statute, the legislature dem-
onstrated an intent to change the pre-existing law,
and the presumption must be that it was intended
to change the meaning of the statute in all the par-
ticulars wherein there is a material change in the
language of the amended act: *United States* v.
*Bashaw,* 50 Fed. 749 (1 C. C. A. 653); *United States*
v. *Keitel,* 211 U. S. 370 (53 L. Ed. 230, 29 Sup. Ct.
Rep. 123). From the amended statute it is very
apparent that the widower's curtesy has been shorn

from the whole to one half of the lands whereof his wife was seized.

The statute was also amended in this particular by providing that "estates by the curtesy may be admeasured, assigned and barred in like manner as the dower of a widow may be admeasured, assigned and barred." The meaning conveyed by these words is evident.

Carving again from the amended statute, we have:

"As far as practicable all other laws of this state applicable to dower shall be applicable in like manner and with like effect to estates by the curtesy."

How unmistakable is the legislative intent here expressed!

Section 10073, Or. L., relating to dower, is made applicable to estates by the curtesy. It bars a nonresident man from the right of curtesy in lands of which his wife was not seized at her death.

We have observed that the statute bars a nonresident woman of dower under circumstances obtaining in the case at bar. Hence, the provision that "all other laws of this state applicable to dower shall be applicable in like manner and with like effect to estates by the curtesy," denies plaintiff's suit.

The provisions of Section 10073, Or. L., must be applied to widow and widower alike.

This case is affirmed.            Affirmed.

Burnett, C. J., and Bean and McCourt, JJ., concur.